Kenneth A. Goldberg, Esq. (KG 0295)
**GOLDBERG & FLIEGEL LLP**
60 East 42nd Street, Suite 3421
New York, New York 10165
(212) 983-1077
Attorneys For Plaintiff

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - x
LORETTA LOCICERO

          Plaintiff,

   - against -

NEW YORK CITY TRANSIT AUTHORITY,

       Defendant
- - - - - - - - - - - - - - - - x

:
:
:
:
:
:
:

**COMPLAINT AND JURY DEMAND**

**JURY TRIAL DEMANDED**

## NATURE OF THE ACTION AND THE PARTIES

    1.   This is an action to redress unlawful discrimination based on sex and age, unlawful harassment, unlawful retaliation, and unlawful employment practices, under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act of 1967, as amended (the "ADEA"), 29 U.S.C. § 621 et seq., the New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. L. § 290 et seq., and the New York City Human Rights Law, (the "NYCHRL"), N.Y.C. Admin. Code § 8-101 et seq.

    2.   Plaintiff Loretta Locicero ("Ms. Locicero" or "Plaintiff") is an adult female citizen, residing in Brooklyn, New York, and a former employee of Defendant.

3. Defendant New York City Transit Authority (also known as MTA New York City Transit), is a public benefit corporation created and existing under the laws of the state of New York with corporate offices and/or a principal place of business in Brooklyn, New York and/or New York, New York.

### JURISDICTION AND VENUE

4. This Court has jurisdiction over Plaintiff's claims pursuant to Title VII, 42 U.S.C. § 2000e-5(f) U.S.C., the ADEA, 29 U.S.C. §§ 216(b), 626(b) to (d), and 28 U.S.C. §§ 1331, 1343, 1367(a) and 2201.

5. Venue is proper in this district pursuant to Title VII, 42 U.S.C. § 2000e-5(f)(3), the ADEA, 29 U.S.C. §§ 216(b), 626(b) to (d), and 28 U.S.C. § 1391(b) and (c).

6. In March 2004, Plaintiff filed a timely charge of discrimination, harassment and retaliation with the New York State Division of Human Rights, which forwarded a copy to the United States Equal Employment Opportunity Commission ("EEOC").

7. On or about May 31, 2006, the Division issued a Determination And Order Of Dismissal For Administrative Convenience.

8. On or about June 9, 2006, the EEOC issued a Notice Of Right To Sue, which Plaintiff received several days later.

-2-

9.   Prior to filing this Complaint, Plaintiff served a copy of this Complaint on the New York City Commission Of Human Rights and the New York City Corporation Counsel.

10.   Plaintiff has satisfied all of the statutory prerequisites to filing this action with this Court.

11.   Plaintiff seeks an award of appropriate relief.

## FACTS

12.   Ms. Locicero is an adult female, born March 11, 1950.

13.   Plaintiff was employed by Defendant from 1976 until September 19, 2005, when Defendant unlawfully constructively discharged Plaintiff's employment.

14.   Over the years, Ms. Locicero has worked in various positions and in various divisions of Defendant.   Over the years, Plaintiff was generally employed in Kings County.

15.   At all relevant times, Ms. Locicero was fully qualified for her positions with Defendant and performed well.

16.   Defendant, by its unlawful conduct, unlawfully constructively discharged Plaintiff effective September 19, 2005.

17.   In 1997, Ms. Locicero went to work for the Subways Capital Programs division of Defendant, as an Associate Transit Management Analyst.

18.   From 1997 through about October 2002, Plaintiff reported to Titus Byaruhanga, Director, Subways Capital Programs.

-3-

19.   From October 2002 through the end of her employment, Plaintiff reported to Timothy Forker, who replaced Mr. Byaruhanga as Director, Subways Capital Programs.

20.   Mr. Byaruhanga and Mr. Forker both reported to Craig Stewart, Chief Officer of Subways, Capital Projects and the head of the division where Plaintiff worked.

21.   Mr. Forker and Mr. Stewart are male and are younger than Plaintiff.

22.   Messrs. Stewart, Forker and/or Byaruhanga had actual and apparent authority over Ms. Locicero and other employees and had significant decision-making, managerial, executive and supervisory authority, including without limitation to make employment decisions, to hire and discharge employees and to make and/or recommend employment and personnel decisions.

23.   Defendant unlawfully discriminated against Ms. Locicero regarding compensation, terms, conditions and privileges of employment, job assignments, promotions and employment opportunities, tools, equipment and privileges, recognition of job performance, background skills and contributions, unlawfully harassed her, and unlawfully constructively discharged her, because of her age and sex and because she opposed, objected to and complaint about discrimination.   Defendant's proffered reason for its conduct was a pretext for unlawful discrimination, unlawful discharge and unlawful retaliation.

-4-

24. For example, Mr. Stewart, Mr. Forker and others unlawfully: (1) denied Ms. Locicero at least two promotions; (2) denied Ms. Locicero raises to which she was entitled; (3) raised false criticisms of Ms. Locicero's intelligence, skills and performance; (4) denied Ms. Locicero equal compensation, terms, conditions and privileges of employment and employment opportunities; (5) assigned demeaning, menial, humiliating and denigrating and inappropriate tasks to Ms. Locicero; (6) verbally assaulted and threatened Ms. Locicero; (6) refused to provide Ms. Locicero with tools, equipment, facilities and privileges for her job; and (7) viciously retaliated against her for opposing, objecting to and complaining about discrimination and harassment, and constructively discharged her.

25. During Ms. Locicero's employment, she opposed, objected to and complained of discrimination and harassment. She repeatedly complained in writing, filing both internal complaints of discrimination, harassment and retaliation and also filing charges regarding same with state and federal agencies. At all times, Defendant was aware of all of Plaintiff's complaints.

26. Defendant did not investigate and did not take appropriate remedial action in response to Ms. Locicero's opposition to, objections to and/or complaints about unlawful discrimination and harassment, and failed to stop the unlawful conduct.

-5-

27.    Defendant ignored Ms. Locicero's opposition to,
objections to and/or complaints about unlawful discrimination and
harassment and Defendant continued to engage in such unlawful
conduct.

28.    Defendant unlawfully retaliated against Ms. Locicero
for engaging in protected activity and opposing, objecting to
and/or complaining about unlawful discrimination and harassment.

29.    Defendant unlawfully constructively discharged
Plaintiff effective September 19, 2005.

30.    Defendant engaged in a pattern and practice of
discrimination based on sex and age, including among other items,
according favorable treatment to males and younger employees
regarding compensation, terms, conditions and privileges of
employment, job assignments, promotions and employment
opportunities, tools, equipment and privileges, and with respect
to recognition of job performance, background skills and
contributions, to the detriment of older and female employees.

31.    During the seven years that Plaintiff was employed by
the Subways Capital Programs division, Mr. Stewart (who had
authority to hire, fire and promote on behalf of Defendant) did
not promote any women in that Division to management positions.

32.    In addition to Plaintiff, Defendant unlawfully
discriminated against other qualified older and female employees,
based on age and sex, including among others Dawn Irby ("Ms.

-6-

Irby") and Evelyn Nau ("Ms. Nau"). Upon information and belief, Ms. Nau is over 40 years old and Ms. Irby is over 50 years old.

33. Defendant's unlawful discrimination against Plaintiff began shortly after she joined the Subways Capital Programs division of Defendant.

34. For example, in 1998, Plaintiff and Richard Burbridge were both working in Subways' Capital Programs, were both working on the same project, and were both reporting to Mr. Byaruhanga.

35. Mr. Burbridge, a younger male, requested that Defendant provide him with two copies of Microsoft's Visual Studio, at a price of more than $1,000 each.

36. Plaintiff, an older female, requested that Defendant provide her with one copy of Lotus SmartSuite, at about $250.

37. Defendant, by Mr. Stewart, granted Mr. Burbridge's request and denied Plaintiff's request. Mr. Stewart's proffered reason for denying Plaintiff's request was lack of funds. This was a pretext for unlawful discrimination based on age and sex. Indeed, Mr. Stewart granted Mr. Burbridge's request for substantially more expensive computer software.

38. Defendant continued to discriminate against Plaintiff and other older and female employees, as shown by the hiring and promotion of less qualified younger males, including among others Timothy Forker.

-7-

39.   In November 1999, Mr. Forker joined Defendant as an
Associate City Planner, Level II.

40.   Mr. Forker was younger than Plaintiff and other female
employees, less experienced than Plaintiff and other female
employees, and less qualified than Plaintiff and other female
employees.

41.   Defendant immediately placed Mr. Forker on the fast
track for promotion because of his age and sex.

42.   Less than one year after Mr. Forker joined Defendant,
Defendant placed him in the Analyst Core Program, in order to
advance him within the organization.

43.   Plaintiff was more qualified than Mr. Forker but
Defendant never placed her in the Analyst Core Program, because
of her age and sex.

44.   Defendant's discrimination based on age and sex became
even more apparent when Plaintiff discovered that Defendant was
engaging in "pre-selection" of employees for promotion based on
age and sex, to the detriment of older and female employees.
Defendant would promote a younger male employee to serve in a
higher level position in an "acting" capacity, only to make that
appointment and promotion permanent when the position was
formally posted.

45.   For example, in or about 1999 or 2000, Defendant posted
the available position of Director, Employees Facilities

-8-

Rehabilitation ("Director EFR"), under Job Vacancy Notice ("JVN") 2000400.

46.   Dawn Irby, a highly qualified older female employee, with at least 15 years experience with Defendant, applied for the Director EFR position. At the time, she was a Dispatcher, Force Accounts Unit, coordinating the Employee Facility Rehabilitation Program with another female employee, Dorothy Ruiz. Ms. Irby had also served as the acting director of the Force Accounts Unit when her supervisor, Mr. Byaruhanga, Director, was on vacation.

47.   Upon information and belief, Mr. Forker, a younger male employee, who had been with Defendant for less than one year, also applied for the position of Director EFR.

48.   Ms. Irby was more qualified than Mr. Forker for the position of Director EFR.   However, Defendant promoted Mr. Forker to the position, and unlawfully denied Ms. Irby the position, because of her age and sex.

49.   Defendant continued to engage in "pre-selection" of younger males for promotion, and continued to discriminate against older and female employees.   In 2002, Defendant engaged in such conduct to the detriment of Plaintiff herself.

50.   In 2002, Defendant promoted Mr. Forker without considering or reviewing Plaintiff and other highly qualified older and female employees for the position.

-9-

51.  As of the beginning of 2002, Mr. Byaruhanga was
Director, Capital Program Force Account Management ("Director
CPFAM"), at Job Grade F (minimum salary $57,800 in 2004 dollars).
The position had about eight subordinates.

52.  In early 2002, Defendant allegedly reevaluated the
position of Director CPFAM and increased the job grade of that
position from Grade F to Grade E (minimum salary of $61,700 in
2004 dollars).

53.  Defendant then transferred Mr. Byaruhanga to the "2nd
Avenue project", a position at Job Grade E.  While this was a
lateral move for this male employee, on or about August 28, 2002,
Pam Noonan-Coppola (Director, Subways Support) referred to it as
a promotion.  The position of Director CPFAM became vacant.

54.  As of 2002, Mr. Forker was Director EFR, and his job
grade in that position had been Grade F.  In mid 2002, Mr.
Stewart appointed Mr. Forker "acting" Director CPFAM, effective
in or about August 2002.  Thus, Mr. Stewart placed Mr. Forker in
Mr. Byaruhanga's prior position, now at Job Grade E.

55.  Thus, in 2002, Defendant promoted Mr. Forker.

56.  In making those promotions, Defendant did not consider
or review any female or older candidates for the position.

57.  Prior to making those promotions, Defendant did not
post either position.

$-10-$

58. Defendant appointed Mr. Forker to the "acting" Director CPFAM position during an alleged "job freeze", to avoid posting the Director CPFAM position for competitive applications.

59. Mr. Stewart publicly stated that if anyone felt that they should have been considered for the position of Director CPFAM, they would have to wait until the official job vacancy posting.

60. Mr. Forker was unqualified for the position of "acting" Director CPFAM.

61. At the time Defendant appointed Mr. Forker "acting" Director CPFAM, Mr. Forker did not have the appropriate credentials, skills or experience for such a position.

62. In October 2002, Plaintiff obtained a civil service promotion from Associate Transit Management Analyst to Computer Specialist (Software) I. With that promotion, Plaintiff was entitled to an increase in salary of up to 10%. Defendant unlawfully denied Plaintiff a raise. Mr. Stewart told Plaintiff that she was not entitled to any raise since she had only obtained a "change of title." Mr. Stewart's alleged reason for denying Plaintiff a raise was a pretext for unlawful discrimination based on age and sex.

63. After denying Plaintiff the raise to which she was entitled, Defendant continued to discriminate against her.

-11-

64.  For example, Mr. Forker told Plaintiff that he did not have any Computer Specialist work for her to perform.  He denied Plaintiff's requests to do Computer Specialist work and ordered Plaintiff to perform various menial and denigrating tasks.

65.  The Metropolitan Transit Authority ("MTA") has an EEO office.  On November 7, 2002, Plaintiff filed a written complaint of discrimination based on sex with the MTA's EEO office.

66.  Defendant unlawfully retaliated against Plaintiff.

67.  On December 18, 2002, the MTA summarily rejected Plaintiff's complaint, stating that "the allegations fail to establish a claim of sex discrimination" and "your complaint has not been accepted for investigation."

68.  On or about September 3, 2003, Plaintiff and John Jue, a younger male, applied to their respective managers for the renewal of internet access privileges.  The managers approved the respective requests, but Mr. Stewart overrode the approval as to Plaintiff and denied Plaintiff's request.  Defendant's proferred reason for its decision is a pretext for unlawful discrimination based on age and sex and retaliation.  At that time, Mr. Jue and Plaintiff were the only Computer Specialists in the division.

69.  On October 1, 2003, Plaintiff submitted a memorandum to Mr. Forker stating that "I wish to relinquish my position in the title of Computer Specialist (Software) Level I and return to my

old title of Associate Transit Management Analyst (ATMA) effective with the end of the current pay period."

70. Plaintiff further stated that "Neither my current duties nor the economic benefits of the position warrant my continuing in it....Since there was no benefit increase in the move into the Computer Specialist title, I do not expect any change will be necessary in leaving it."

71. As of November 2003, Plaintiff resumed the position of Associate Transit Management Analyst.

72. Defendant continued to discriminate against Plaintiff and other highly qualified older and female employees with respect to promotion and other matters.

73. On or about December 26, 2003, Defendant finally posted the position of Director, Capital Program Force Account Management (JVN 002155). This is the position that Mr. Forker was currently holding in an "acting" capacity since 2002.

74. Defendant had pre-selected Mr. Forker for the position of Director CPFAM position posted in JVN 002155, based on age and sex, and intended to make his "acting" assignment permanent.

75. Defendant posted the Director CPFAM position but did not advertise it on Defendant's intranet ("TENS"), which had been done with prior positions such as JVN 001832.

76. Defendant's job posting for the Director CPFAM position (JVN 002155) stated that Defendant would fill the position based

-13-

on "evaluation of education, skills, experience and interview."
Accordingly, under Defendant's written policies, Defendant was
required to engage in a complete review of all applicants and was
expressly prohibited from pre-selecting anyone for the position.

77.   Ms. Locicero was fully qualified for the Director CPFAM
position (JVN 002155) and, in fact, exceeded the stated
requirements for the position.  She was exceedingly qualified for
the position given her experience, qualifications and
performance.  As of December 2003, Plaintiff had at least eight
years of management and supervisory experience within other
transit unit groups, far more than Mr. Forker.

78.   On or about January 13, 2004, Plaintiff timely applied
in writing for the Director CPFAM position (JVN 002155).

79.   On January 23, 2004, Plaintiff met with Osmond Ken
Pierce, Senior Director, who reported to Mr. Stewart.

80.   Mr. Pierce, a younger male, told Plaintiff in sum and
substance that "a satisfactory candidate was already in place and
would not be removed on the chance that a superior candidate may
be available."  Simply put, Defendant told Ms. Locicero that Mr.
Forker, a younger male, had been selected for the Director
position and that Ms. Locicero would not be considered for the
job.   In fact, Mr. Pierce ended the meeting by telling Plaintiff
in sum and substance that "You know you aren't going to get the
position: What will you do about it?"

-14-

81.   Plaintiff's application materials stated, among other items, that she had "several ideas to enhance the functions of the unit that I am eager to demonstrate."   Mr. Pierce asked Plaintiff for her ideas, to take advantage of her experience and expertise, knowing that Plaintiff would never be promoted.

82.   Plaintiff was not the only highly qualified older female who applied for the position of Director CPFAM.   In addition to Plaintiff, Evelyn Nau, another highly qualified older female employee, also applied for the position.   Upon information and belief, Ms. Nau was Associate Project Manager at that time.

83.   Like Plaintiff, Ms. Nau was more qualified for the position than Mr. Forker and was older than him and female.   In fact, Ms. Nau had from time to time performed Mr. Byaruhanga's responsibilities as Director when he previously held that position and was absent.   Like Plaintiff, Defendant made similar unlawful statements to Ms. Nau in response to her application and denied Ms. Nau the position because of her age and sex.

84.   Defendant had engaged in unlawful "pre-selection" of the candidate for the Director position and had selected a less qualified younger male employee for the position, all in violation of law and Defendant's written policies.   This was at least the second occasion on which Defendant had promoted Mr. Forker ahead of more qualified older and female employees.

-15-

85.   In February 2004, Plaintiff filed another written complaint with the MTA's EEO office alleging, among other items, discrimination based on age and sex.   Defendant continued to discriminate against Plaintiff based on her age and sex and retaliated against her for her protected activities.

86.   On or about March 2, 2004, Plaintiff, by counsel, filed a letter with Defendant complaining about its actions regarding Plaintiff's application for promotion to the Director position (JVN 002155) and seeking appropriate remedial action.

87.   After Plaintiff filed her February 2004 complaint, Defendant made false and defamatory statements about Plaintiff to various employees.   Mr. Stewart violated confidentiality policies regarding Plaintiff's complaints by asking Ms. Nau about them on or about March 4, 2004.   On or about March 16, 2004, Plaintiff complained to Defendant, by Patrick Damas, regarding same.

88.   On or about March 23, 2004, Plaintiff filed a charge of discrimination/retaliation with the New York State Division of Human Rights, which forwarded a copy to EEOC.   As with Plaintiff's internal written complaints, Defendant received this charge as well and was fully aware of same.

89.   With the promotion of Mr. Forker to "acting" Director CPFAM, his prior position of Director EFR became vacant.

90.   Defendant could have appointed Ms. Irby "acting" Director EFR, since she was qualified for the position and

previously applied for it.   Instead, Defendant continued to discriminate against older and female employees including without limitation Plaintiff and Ms. Irby.

91.   Defendant assigned Ms. Irby and Joseph DiLorenzo to jointly serve as "acting" co-directors in "alternating months." This was absurd.   In fact, Ms. Irby and Mr. DiLorenzo had no direct reports, unlike Mr. Forker who had about eight direct reports when he served as the sole "acting" Director CPFAM. Moreover, Mr. DiLorenzo was a younger male employee and was less experienced and less qualified than Ms. Irby.   Defendant had made this joint appointment in order to unlawfully pre-select Mr. DiLorenzo for promotion to the permanent position and in an thinly veiled attempt to cover up the ongoing discrimination based on age and sex.

92.   In March 2004, Defendant posted the position of Director EFR by Job Vacancy Notice ("JVN") 002233, vacated by Mr. Forker and currently being performed by the two acting "co-directors," Ms. Irby and Mr. DiLorenzo.

93.   On or about March 25, 2004, Plaintiff timely applied for the position of Director EFR.

94.   On April 6, 2004, Defendant sent a letter to Plaintiff rejecting in writing her application for the position of Director CPFAM.   As noted above, this was the position for which Mr.

-17-

Forker had been unlawfully pre-selected and about which Plaintiff
had a meeting with Defendant months earlier on January 23, 2004.

95.  Defendant's April 6, 2004 letter to Plaintiff stated:
"This is to thank you for interviewing for the position of
Director, Capital Program Force Account Management in the Capital
Programs Unit. Many fine candidates with excellent credentials
like yourself were considered. Unfortunately, we will not be able
to offer you the position. However, we will retain a copy of
your resume on file for referral to other appropriate openings,
which might arise."

96.  Regarding the Director EFR position, Defendant
unlawfully denied Plaintiff's March 2004 application for this
job.  On or about May 10, 2004, Plaintiff learned that Defendant
had promoted Mr. DiLorenzo, a younger male, to the Director
position ("JVN 002233").

97.  Just like Mr. Forker, Defendant had unlawfully "pre-
selected" Mr. DiLorenzo for promotion to Director EFR, by first
making him "acting" co-Director with Ms. Irby (then serving as an
Associate Transit Management Analyst) and then promoting Mr.
DiLorenzo to the permanent position when it was posted.

98.  The promotion of Mr. DiLorenzo was particularly
egregious.  Indeed, Defendant did not interview Plaintiff and,
upon information and belief, did not even consider Plaintiff's
application for the job.  Defendant unlawfully denied Plaintiff

-18-

the Director EFR position because of Plaintiff's age and sex and in retaliation for Plaintiff's protected activities.

99.  On May 14, 2004, Mr. Forker unlawfully harassed and abused Plaintiff, allegedly because she had worked through lunch. Mr. Forker's proferred reason for his conduct was a pretext for unlawful discrimination, harassment and retaliation.  Indeed, Plaintiff had not asked to be paid for the time and, in fact, was going above and beyond the call of duty in performing her job duties on behalf of Defendant during her regular lunch hour.

100.  On May 26, 2004, the MTA summarily rejected Plaintiff's February 2004 complaint of age and sex discrimination, stating to Plaintiff in writing that "there is no reasonable cause to believe that you were subjected to discrimination based on your age or sex."

101.  After MTA rejected Plaintiff's internal written complaint of discrimination, Defendant escalated the unlawful discrimination and retaliation against Plaintiff.

102.  For example, on June 3, 2004, Mr. Forker unlawfully assaulted, verbally attacked and threatened Plaintiff, and violently hit his desk while yelling loudly at Plaintiff.  He said, among other items, "Do you want to start something".

103.  On or about June 8, 2004, Plaintiff filed an internal written complaint with Defendant's Transit Policy Compliance Group.

-19-

104. For example, on June 15, 2004, Mr. Forker falsely accused Plaintiff of being AWOL on June 4, 2004 when in fact Plaintiff had been visiting Labor Relations to pursue legal claims against Defendant.  Mr. Forker unlawfully tampered with and defaced Plaintiff's time sheets.  Mr. Forker also threatened Plaintiff not to go to Labor Relations.

105. For example, Defendant also assigned Plaintiff tasks with arbitrary and burdensome, if not impossible, deadlines and/or denied Plaintiff tools and equipment to do the tasks.

106. On June 23, 2004, Plaintiff filed another written complaint with the MTA's EEO office.

107. As a result of Defendant's unlawful conduct, Plaintiff was forced to take a leave of absence without pay and Plaintiff began that leave on or about July 26, 2004.

108. As of the date of Plaintiff's leave of absence, the unit composition was 28 persons, including 11 managers.  10 of the 11 managers were men.  Of the 28 persons, 15 were men and 13 were women.  The ratio of males to females holding managerial titles in Plaintiff's unit was at least 8:1.

109. On or about August 9, 2004, Defendant sent a letter to Plaintiff stating that "Forker exhibited unprofessional behavior towards you."  However, Defendant failed and refused to take any remedial action regarding Plaintiff's complaints.  In fact, upon information and belief, Mr. Forker subsequently engaged in the

-20-

same or similar unlawful conduct toward Neelu Reddy, another
older and female employee, and Ms. Reddy transferred to a
different unit within the group in an effort to get away from Mr.
Forker.

110. On or about August 23, 2004, Plaintiff again complained
to Defendant and on August 24, 2004 filed a written complaint.

111. On or about December 6, 2004, the MTA sent a letter to
Plaintiff stating that her internal complaint was being closed
because of her NYSDHR complaint.   Thus, Defendant's own EEO
office failed and refused to investigate or take any remedial
action in response to the written internal complaints filed by
Plaintiff over the years.

112. On July 26, 2005, Plaintiff sent a letter to Defendant
regarding her leave of absence and plans for returning to work.

113. On September 15, 2005, Defendant sent a letter to
Plaintiff ordering her to return to work on September 26, 2005.
This was prior to Plaintiff's exhaustion of leave time.

114. Defendant sent its September 15, 2005 notice to
Plaintiff to give the false impression that she was absent
without authorization, to unlawfully coerce her resignation
and/or to create a phony paper trail to support her unlawful
discharge.

115. Defendant unlawfully constructively discharged
Plaintiff effective September 19, 2005.

-21-

116. At that time, Plaintiff was forced to sacrifice at least 28 years of seniority with Defendant.

117. At that time, Plaintiff was forced to tender her early retirement, at loss of at least 27% of her benefits.

118. Defendant unlawfully constructively discharged Ms. Locicero because of her sex and age and Defendant's conduct constituted unlawful discrimination, harassment and retaliation. Defendant's proffered reasons for the challenged conduct are a pretext for unlawful discrimination, harassment and unlawful retaliation.

119. Defendant's discrimination and harassment was severe and pervasive, adversely affected the terms, conditions and privileges of Ms. Locicero's employment, resulted in adverse tangible employment actions, and created a hostile, offensive and abusive work environment.

120. Tolerance of discrimination and harassment was a term and condition of Ms. Locicero's employment, Ms. Locicero suffered adverse tangible employment actions because she refused to acquiesce to that conduct and protested such conduct, and Ms. Locicero was the victim of "quid pro quo" harassment.

121. Defendant's unlawful conduct was intentional and was carried out with malice or reckless indifference to Ms. Locicero's protected rights to be free from unlawful discrimination, harassment and retaliation.

122. Defendant knew or should have known of the unlawful discrimination, unlawful harassment and unlawful retaliation against Ms. Locicero, did nothing to stop such unlawful conduct, and that conduct continued.

123. Defendant's unlawful discrimination, unlawful harassment, and unlawful retaliation against Ms. Locicero adversely affected the terms, conditions and privileges of her employment with Defendant.

124. Defendant authorized unlawful discrimination, unlawful harassment and unlawful retaliation against Ms. Locicero and the employees who engaged in such unlawful conduct were unfit and Defendant was reckless and/or negligent in employing them.

125. Defendant failed to exercise reasonable care to prevent and correct unlawful discrimination, unlawful harassment and unlawful retaliation against Ms. Locicero and Defendant ratified, approved, and/or condoned such unlawful conduct.

126. Upon information and belief, Defendant has engaged in a pattern and practice of unlawful discrimination, harassment, and retaliation.

127. As a result of Defendant's unlawful conduct, Ms. Locicero has suffered, and continues to suffer, among other items, substantial damages.

128. As a result of Defendant's unlawful conduct, Ms. Locicero has suffered, and continues to suffer, among other

items, injury, impairment and damage to her good name and
reputation, emotional distress, mental anguish, emotional pain,
suffering, inconvenience, loss of enjoyment of life, and lasting
embarrassment and humiliation.

129. Ms. Locicero is entitled to the relief sought herein.

### COUNT ONE

### (TITLE VII)

130. Ms. Locicero repeats and realleges every allegation in
paragraphs 1 through 129 of this Complaint with the same force
and effect as though fully set forth herein.

131. Defendant employs more than 15 employees.

132. At all relevant times, Defendant was an "employer"
within the meaning of Title VII.   42 U.S.C. § 2000e(b).

133. At all relevant times, Ms. Locicero was an "employee"
within the meaning of Title VII.   42 U.S.C. § 2000e(f).

134. Defendant's conduct, as alleged herein, constituted
unlawful employment practices and unlawful discrimination on the
basis of sex, in violation of Title VII.   42 U.S.C. §§ 2000e,
2000e-2(a).

135. Defendant's conduct, as alleged herein, constituted
unlawful retaliation in violation of Title VII.   42 U.S.C.
§§ 2000e, 2000e-3(a).

136. Defendant's conduct, as alleged herein, was carried out
with malice or reckless disregard for Ms. Locicero's protected

-24-

rights to be free from discrimination, harassment, and retaliation.

137. As a result of Defendant's unlawful conduct, Ms. Locicero has suffered and continues to suffer injury, with resulting monetary and other damages, including without limitation lost wages, lost back pay and front pay, lost bonuses, lost benefits, lost pension and retirement earnings, lost interest and attorneys' fees and costs. Ms. Locicero is entitled to recover such monetary and other damages, punitive damages, interest, and attorneys' fees and costs from Defendant under Title VII.

138. As a further result of Defendant's unlawful conduct, Ms. Locicero has suffered and continues to suffer, among other items, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, and lasting embarrassment and humiliation. Ms. Locicero is entitled to recover damages for such injuries from Defendant under Title VII.

## COUNT TWO

### (ADEA)

139. Ms. Locicero repeats and realleges every allegation in paragraphs 1 through 138 of this Complaint with the same force and effect as though fully set forth herein.

140. At all relevant times, Defendant was an "employer" within the meaning of the ADEA, 29 U.S.C. § 630(b).

141. At all relevant times, Ms. Locicero was a "person" within the meaning of the ADEA, 29 U.S.C. § 630(a).

142. Defendant's conduct, as alleged herein, constituted unlawful discriminatory practices and unlawful discrimination on the basis of age, in violation of the ADEA. See, e.g., 29 U.S.C. §§ 623, 623(a).

143. Defendant's conduct, as alleged herein, constituted unlawful retaliation in violation of the ADEA. See, e.g., 29 U.S.C. §§ 623, 623(d).

144. Defendant's unlawful conduct, as alleged herein, was willful within the meaning of the ADEA. See, e.g., 29 U.S.C. §§ 626, 626(b).

145. As a result of Defendant's unlawful conduct, Ms. Locicero has suffered and continues to suffer injury, with resulting monetary and other damages, including without limitation lost wages, lost back pay and front pay, lost bonuses, lost benefits, lost pension and retirement earnings, lost interest and attorneys' fees and costs. Ms. Locicero is entitled to recover such monetary and other damages, liquidated damages, interest, and attorneys' fees and costs, from Defendant, under the ADEA.

### COUNT THREE

#### (NYSHRL)

146. Ms. Locicero repeats and realleges every allegation in paragraphs 1 through 145 of this Complaint with the same force and effect as though fully set forth herein.

147. At all relevant times, Defendant was an "employer" within the meaning of the NYSHRL.  N.Y. Exec. Law § 292(5).

148. At all relevant times, Ms. Locicero was an "employee" within the meaning of the NYSHRL, and a "person" within the meaning of the NYSHRL.  N.Y. Exec. Law §§ 292(1), 292(6).

149. Defendant's conduct, as alleged herein, constituted unlawful discriminatory practices and unlawful discrimination on the basis of sex and age, in violation of the NYSHRL.  N.Y. Exec. L. §§ 296, 296(1)(a).

150. Defendant's conduct, as alleged herein, constituted unlawful retaliation in violation of the NYSHRL.  N.Y. Exec. L. §§ 296, 296(1)(e), 296(3-a)(c), 296(7).

151. As a result of Defendant's unlawful conduct, Ms. Locicero has suffered and continues to suffer injury, with resulting monetary and other damages, including without limitation lost wages, lost back pay and front pay, lost bonuses, lost benefits, lost pension and retirement earnings, lost interest and attorneys' fees and costs.  Ms. Locicero is entitled

to recover such monetary and other damages, from Defendant under the NYSHRL.

152. As a further result of Defendant's unlawful conduct, Ms. Locicero has suffered and continues to suffer, among other items, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, and lasting embarrassment and humiliation. Ms. Locicero is entitled to recover damages for such injuries from Defendant under the NYSHRL.

### COUNT FOUR

### (NYCHRL)

153. Ms. Locicero repeats and realleges every allegation in paragraphs 1 through 152 of this Complaint with the same force and effect as though fully set forth herein.

154. At all relevant times herein, Defendant was an "employer", "covered entity" and a "person" within the meaning of the NYCHRL. N.Y.C. Admin. Code §§ 8-102, 8-102(1), 8-102(5), 8-102(17), 8-107, 8-107(1).

155. At all relevant times herein, Ms. Locicero was a "person" within the meaning of the NYCHRL. N.Y.C. Admin. Code §§ 8-102, 8-102(1).

156. Defendant's conduct, as alleged herein, constituted "unlawful discriminatory practices" and unlawful discrimination

-28-

on the basis of sex and age, in violation of the NYCHRL.   N.Y.C.
Admin. Code §§ 8-107, 8-107(1)(a).

157. Defendant's conduct, as alleged herein, constituted
unlawful retaliation in violation of the NYCHRL.   N.Y.C. Admin.
Code §§ 8-107, 8-107(7).

158. Defendant's conduct, as alleged herein, was carried out
with malice or reckless disregard for Ms. Locicero's protected
rights to be free from discrimination and harassment, and
retaliation.

159. As a result of Defendant's unlawful conduct, Ms.
Locicero has suffered and continues to suffer injury, with
resulting monetary and other damages, including without
limitation lost wages, lost back pay and front pay, lost bonuses,
lost benefits, lost pension and retirement earnings, lost
interest and attorneys' fees and costs.

160. As a further result of Defendant's unlawful conduct,
Ms. Locicero has suffered and continues to suffer, among other
items, injury, impairment and damage to her good name and
reputation, emotional distress, mental anguish, emotional pain,
suffering, inconvenience, loss of enjoyment of life, and lasting
embarrassment and humiliation.

161. Ms. Locicero is entitled to recover monetary damages
and other damages and relief, punitive damages, interest, and
attorneys' fees and costs from Defendant under the NYCHRL.

-29-

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment as follows:

(A)  On Count One, enter a judgment declaring the acts and practices of Defendant to be in violation of Title VII, see, e.g., 42 U.S.C. § 2000e-5(g);

(B)  On Count One, award Plaintiff as against Defendant reinstatement and the amount of wages, including without limitation back pay, front pay, bonuses, benefits, pension and retirement earnings, and interest lost as a result of said Defendant's unlawful discrimination, unlawful harassment and unlawful retaliation, in accordance with Title VII, see, e.g., 42 U.S.C. § 2000e-5(g);

(C)  On Count One, award Plaintiff as against Defendant consequential damages for losses resulting from Defendant's unlawful discrimination, unlawful harassment and unlawful retaliation, in accordance with Title VII, see, e.g., 42 U.S.C. § 2000e-5(g);

(D)  On Count One, award Plaintiff as against Defendant compensatory damages for, among other items, injury, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, lasting embarrassment and humiliation, and other pecuniary and nonpecuniary losses, in accordance with Title VII, see, e.g., 42 U.S.C. § 1981a;

-30-

(E)   On Count One, award Plaintiff as against Defendant punitive damages, in accordance with Title VII, see, e.g., 42 U.S.C. § 1981a;

(F)   On Count One, award Plaintiff as against Defendant the cost of this action, together with reasonable attorneys' fees, in accordance with Title VII, see, e.g., 42 U.S.C. § 2000e-5(k);

(G)   On Count Two, enter a judgment declaring the acts and practices of Defendant to be in violation of the ADEA, see, e.g., 29 U.S.C. §§ 216(b), 623, 626(b) to (d);

(H)   On Count Two, award Plaintiff as against Defendant reinstatement and the amount of wages, including without limitation back pay, front pay, bonuses, benefits, pension and retirement earnings, and interest lost as a result of Defendant's unlawful discrimination, unlawful harassment and unlawful retaliation, in accordance with the ADEA, see, e.g., 29 U.S.C. §§ 216(b), 623, 626(b) to (d);

(I)   On Count Two, award Plaintiff as against Defendant consequential damages for losses resulting from Defendant's unlawful discrimination, unlawful harassment and unlawful retaliation, in accordance with the ADEA, see, e.g., 29 U.S.C. §§ 216(b), 623, 626(b) to (d);

(J)   On Count Two, award Plaintiff as against Defendant liquidated damages, in accordance with the ADEA, 29 U.S.C. §§ 216(b), 623, 626(b) to (d);

-31-

(K)   On Count Two, award Plaintiff as against Defendant the cost of this action, together with reasonable attorneys' fees, in accordance with the ADEA, see, e.g., 29 U.S.C. §§ 216(b), 623, 626(b) to (d);

(L)   On Count Three, enter a judgment declaring the acts and practices of Defendant to be in violation of the NYSHRL, see, e.g., N.Y. Exec. L. § 297(9);

(M)   On Count Three, award Plaintiff as against Defendant reinstatement and the amount of wages, including without limitation back pay, front pay, bonuses, benefits, pension and retirement earnings, and interest lost as a result of Defendant's unlawful discrimination, unlawful harassment and unlawful retaliation, in accordance with the NYSHRL, see, e.g., N.Y. Exec. L. § 297(9);

(N)   On Count Three, award Plaintiff as against Defendant consequential damages for losses resulting from Defendant's unlawful discrimination, unlawful harassment and unlawful retaliation, in accordance with the NYSHRL, see, e.g., N.Y. Exec. L. § 297(9);

(O)   On Count Three, award Plaintiff as against Defendant compensatory damages for, among other items, injury, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, lasting embarrassment and humiliation, and

other pecuniary and nonpecuniary losses, in accordance with the NYSHRL, see, e.g., N.Y. Exec. L. § 297(9);

(P)   On Count Four, enter a judgment declaring the acts and practices of Defendant to be in violation of the NYCHRL, see, e.g., N.Y.C. Admin. Code § 8-502;

(Q)   On Count Four, award Plaintiff as against Defendant reinstatement and the amount of wages, including without limitation back pay, front pay, bonuses, benefits, pension and retirement earnings, and interest lost as a result of Defendant's unlawful discrimination, unlawful harassment and unlawful retaliation, in accordance with the NYCHRL, see, e.g., N.Y.C. Admin. Code § 8-502;

(R)   On Count Four, award Plaintiff as against Defendant consequential damages for losses resulting from Defendant's unlawful discrimination, unlawful harassment and unlawful retaliation, in accordance with the NYCHRL, see, e.g., N.Y.C. Admin. Code § 8-502;

(S)   On Count Four, award Plaintiff as against Defendant compensatory damages for, among other items, injury, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, lasting embarrassment and humiliation, and other pecuniary and nonpecuniary losses, in accordance with the NYCHRL, see, e.g., N.Y.C. Admin. Code § 8-502;

-33-

(T)  On Count Four, award Plaintiff as against Defendant punitive damages, in accordance with the NYCHRL, see, e.g., N.Y.C. Admin. Code § 8-502;

(U)  On Count Four, award Plaintiff as against Defendant the cost of this action, together with reasonable attorneys' fees, in accordance with the NYCHRL, see, e.g., N.Y.C. Admin. Code § 8-502; and

(V)  Grant Plaintiff such other and further relief as may be necessary and proper.

### JURY DEMAND

Plaintiff demands a jury trial for all issues triable.

Dated:    New York, New York
          September 1, 2006

                    GOLDBERG & FLIEGEL LLP

          By:  _Kenneth A. Goldberg_
               Kenneth A. Goldberg (KG 0295)
               60 East 42nd Street, Suite 3421
               New York, New York 10165
               (212) 983-1077
               Attorneys for Plaintiff

-34-