Kenneth A. Goldberg, Esq.
Goldberg & Fliegel LLP
60 East 42nd Street, Suite 3421
New York, New York 10165
(212) 983-1077
Attorneys For The Plaintiff

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LORETTA LOCICERO,

                         :

                Plaintiff,

                         :    06 CIV 4793 (FB) (JO)

     - against -

                         :

NEW YORK CITY TRANSIT AUTHORITY,

                         :

                Defendant.

                         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................. iv

PRELIMINARY STATEMENT ................................................ 1

FACTS .................................................................... 4

ARGUMENT ................................................................ 4

POINT ONE
THE STANDARD FOR A MOTION FOR SUMMARY JUDGMENT IS EXTREMELY
RIGOROUS, PARTICULARLY IN DISCRIMINATION ACTIONS ..................... 4

POINT TWO
PLAINTIFF'S CLAIMS ARE TIMELY ........................................... 7

    A.    The Statute Of Limitations ........................................... 7

    B.    Incidents Outside The Statute Of Limitations Are Admissible At Trial As
        Relevant Background Evidence Of Defendant's Discriminatory And Retaliatory
        Motive .......................................................... 8

POINT THREE
THE COURT SHOULD DENY DEFENDANT'S MOTION AS TO TIMELINESS
BECAUSE THE INCIDENTS AT ISSUE ARE TIMELY AND/OR ARE
ADMISSIBLE AT TRIAL AS RELEVANT BACKGROUND EVIDENCE OF
DEFENDANT'S DISCRIMINATORY/RETALIATORY MOTIVE ...................... 9

    A.    Defendant's Arguments ............................................. 9

    B.    The 1998 Denial Of Software Is An Adverse Incident And Occurred Under
        Circumstances Reflecting Discrimination
        ............................................................. 10

    C.    The 2000 Discriminatory Promotion Decision Regarding Director EFR Is
        Admissible At Trial As Background Evidence Of Defendant's Unlawful
        Discriminatory Motive
        ............................................................. 11

    D.    The 2002 Appointment of Acting Directors Is An Adverse Incident Reflecting
        Unlawful Discrimination By Defendant .............................. 12

E.      Defendant's Unlawful Denial Of A Raise To Plaintiff When She Was Promoted To Computer Specialist Is An Adverse Incident, A Discriminatory Incident, And Is A Timely Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**POINT FOUR**
PLAINTIFF HAS ESTABLISHED A HOSTILE WORK ENVIRONMENT AND, THEREFORE, THE COURT SHOULD DENY DEFENDANT'S MOTION REGARDING PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIMS      . . . . . . . . . . . . . . . . . . . . . 15

A.      Standard For Hostile Work Environment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

B.      Plaintiff Established A Hostile Work Environment . . . . . . . . . . . . . . . . . . . . . . . 16

C.      Plaintiff's Hostile Work Environment Claims Are Timely . . . . . . . . . . . . . . . . 19

**POINT FIVE**
PLAINTIFF HAS ESTABLISHED HER CLAIMS OF RETALIATION AND THEREFORE, THE COURT SHOULD DENY DEFENDANT'S MOTION REGARDING PLAINTIFF'S CLAIMS OF RETALIATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

A.      The Standard For Retaliation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

B.      Plaintiff Established Her Claims Of Retaliation . . . . . . . . . . . . . . . . . . . . . . . . . 21

C.      Defendant's Denial Of Computer Work To Plaintiff, When She Was A "Computer Specialist", Was Retaliation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

D.      Forker's November 2003 Note On Plaintiff's Time Sheet Is Actionable Retaliation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

E.      Forker's Verbal Abuse Toward Plaintiff For Working Through Lunch In May 2004 For Coverage Is Actionable Retaliation . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

F.      Forker's Unlawful Assault On June 3, 2004 Is Retaliation . . . . . . . . . . . . . . . . 26

G.      Forker's Verbal And Written Abuse Of Plaintiff For Going to Labor Relations On June 4, 2004 Is Actionable Retaliation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

H.      Forker's Verbal And Written Abuse Of Plaintiff For Interviewing With Another City Agency On June 16, 2004 Is Actionable Retaliation . . . . . . . . . . . . . . . . . . 29

I.      Assignment Of Menial, Degrading Tasks Is Retaliation
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

J.       The Numerous Incidents Establish A Hostile Work Environment . . . . . . . . . . . 30

K.       Plaintiff Has Established A Causal Connection Between Her Protected
         Complaints And Defendant's Retaliatory Acts . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

         1.       Plaintiff Engaged In Protected Activity And Defendant Engaged In
                  Numerous Acts Of Unlawful Retaliation . . . . . . . . . . . . . . . . . . . . . . . . . 31

         2.       The Evidence Establishes A Causal Connection . . . . . . . . . . . . . . . . . . . 31

POINT SIX
DEFENDANT CONSTRUCTIVELY DISCHARGED PLAINTIFF . . . . . . . . . . . . . . . . . . . . . 33

A.       Standard For Constructive Discharge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

B.       Plaintiff Has Substantial Evidence Of Constructive Discharge . . . . . . . . . . . . . 33

POINT SEVEN
DEFENDANT UNLAWFULLY DENIED PLAINTIFF PROMOTIONS . . . . . . . . . . . . . . . . . 35

A.       The Standard For Denial Of Promotion Claims . . . . . . . . . . . . . . . . . . . . . . . . . 35

B.       Director Force Accounts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

C.       Director EFR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

POINT EIGHT
DEFENDANT IS SUBJECT TO THE NYCHRL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

POINT NINE
THE COURT SHOULD STRIKE THE ELEVENTH-HOUR AFFIDAVITS
SUBMITTED BY DEFENDANT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

POINT TEN
CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

## TABLE OF AUTHORITIES

### FEDERAL CASES

Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . 36

Alfano v. Costello, 294 F.3d 365 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Bickerstaff v. Vassar College, 196 F.3d 435, 455 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . 40

Bogdan v. New York City Tr. Auth., No. 02-CV-9587, 2005 WL 1161812

(S.D.N.Y. May 13, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 21

Chambers v. TRM Copy Centers Corp., 43 F.3d 29 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . 5

Collier v. Boymelgreen Developers, No. 06 CV 5425 (SJ)(E.D.N.Y. Mar. 24, 2008) . . . . . . . . . 8

Collins v. N.Y. City Transit Auth., 305 F.3d 113 (2d Cir. 2002)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 25

Cronin v. Aetna Life Ins. Co., 46 F.3d 196 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Cruz v. Coach Stores, Inc., 202 F.3d 560 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 16

Danzer v. Norden Sys., Inc., 151 F.3d 50 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Dister v. Cont'l Group, Inc., 859 F.2d 1108 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Everson v. New York City Transit Authority, Civ. No. 1:02-Cv-1121-ENV-JMA

(E.D.N.Y. Feb. 16, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 35, 39

Feingold v. New York, 366 F.3d 138 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Fruchter v. Sossei, No. 94 Civ. 8586 (LBS), 1996 WL 640896, at *4 (S.D.N.Y. Nov. 4, 1996)
(Sand, J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Galabya v. New York City Bd. of Educ., 202 F.3d 636 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . 21

Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219 (2d Cir. 1994) . . . . . . . 5, 7

Graham v. Long Island R.R., 230 F.3d 34 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 7

Harris v. Forklift Sys., Inc., 510 U.S. 17 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Hayes v. New York City Dep't of Corrs., 84 F.3d 614, 619 (2d Cir. 1996) . . . . . . . . . . . . . . . . 40

Holcomb v. Iona College, 521 F.3d 130 (2nd Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Holt v. KMI-Continental, Inc., 95 F.3d 123 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Kerzer v. Kingly Mfg., 156 F.3d 396 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Krikelis v. Vassar College, No. 06-CV-4203 (KMK) (S.D.N.Y. Aug. 7, 2008) . . . . . . . . . . . . . 16

Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618, 127 S. Ct. 2162 (2007) . . . . . . . . . . 7, 8

Liburd v. Bronx Lebanon Hospital Center, No. 07 Civ. 11316 (HB)

(S.D.N.Y. Aug. 18, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Mack v. Otis Elevator Co., 326 F.3d 116 (2nd Cir. 2003), cert. denied, 540 U.S. 1016 (2003) . 33

Mack v. U.S., 814 F.2d 120, 124 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

Maresco v. Evans Chemetics, Div. of W.R. Grace & Co., 964 F.2d 106 (2d Cir. 1992) . . . . . . . 5

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 36

Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Muhammad v. New York City Tr. Auth., 450 F. Supp.2d 198 (E.D.N.Y. 2006) . . . . . . . . . . . . 39

Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 8,
20

Nuchman v. City of New York, No. 05-CV-4561 (FB) (LB) (E.D.N.Y. June 30, 2009) . . . . . 6, 7

Pennsylvania State Police v. Suders, 542 U.S. 129 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

v

Petrosino v. Bell Atlantic, 385 F.3d 210 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 20, 33

Raniola v. Bratton, 243 F.3d 610 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Reed v. A.W. Lawrence & Co., 95 F.3d 1170 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Reinhard v. Fairfield Maxwell, Ltd., 707 F.2d 697 (2d Cir. 1983)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

Richardson v. N.Y.S. Dep't of Corr. Serv., 180 F.3d 426 (2d Cir. 1999) . . . . . . . . . . . . . . . . . 16

Rosen v. Thornburgh, 928 F.2d 528 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

Simmons v. New York City Transit Authority,(CPS)(RLM)(E.D.N.Y. Jul. 17, 2008) . . . . . . . . 40

Stamm v. New York City Transit Authority, No. 04-CV-2164, 2006 WL 1027142

(E.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39, 40

Stern v. Trustees of Columbia Univ., 131 F.3d 305 (2d Cir. 1997)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Terry v. Ashcroft, 336 F.3d 128 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 33

Tewksbury v. Ottaway Newspapers, 192 F.3d 322 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . 7

Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62 (2d Cir. 2000) . . . . . . . . . . . . . . . . 20

Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62 (2d Cir. 2000) . . . . . . . . . . . . . . . . 16

Wilson v. N.Y.C. Dep't of Trans., 2005 WL 2385866 (S.D.N.Y., Sept. 28, 2005) . . . . . . . 21, 25

Zakre v. Norddeutsche Landesbank Girozentrale, 396 F. Supp. 2d 483 (S.D.N.Y. 2005) . . . . . 36

## FEDERAL STATUTES

29 U.S.C. § 626(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

42 U.S.C. § 2000e-5(e)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

42 U.S.C. § 2000e-5(f)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**FEDERAL RULES**

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**STATE CASES**

Tang v. New York City Tr. Auth., 55 A.D.3d 720, 867 N.Y.S.2d 453,

2008 NY Slip Op 07903 (App. Div. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

**STATE STATUTES**

N.Y. Lab. L. § 297(9) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**STATE RULES**

N.Y.C.P.L.R. § 214(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**PRELIMINARY STATEMENT**

Plaintiff, Loretta Locicero ("Plaintiff" or "Ms. Locicero"), submits this memorandum of

law in opposition to Defendant's motion for summary judgment.  For the reasons discussed

below and in Plaintiff's Statement Of Disputed Material Facts Pursuant To Local Rule 56.1

("Plaintiff's Statement of Facts" or "Pl. Stmnt.") the Court should deny Defendant's motion.

Ms. Locicero is a highly qualified older female that was employed by the New York City

Transit Authority for almost thirty years, from 1976 through 2005.  In 1997, Ms. Locicero

transferred into Defendant's Subways Capital Programs department, run by Craig Stewart.  She

witnessed and/or suffered incidents of discrimination from 1998 forward against older female

employees, including herself, Dawn Irby and Evelyn Nau.

Defendant repeatedly denied Plaintiff, Ms. Irby and Ms. Nau promotions to Director

positions and instead filled such positions with younger less qualified males, including Tim

Forker and Joeseph DiLorenzo.  Notably, Mr. Forker joined Defendant in 1999 and was placed

on the fast track for promotion and advancement, quickly passing Plaintiff, Ms. Irby and Ms.

Nau.

Defendant repeatedly denied Plaintiff raises to which she was entitled.  In 2002,

Defendant purportedly promoted Plaintiff from Associate Transit Management Analyst

("ATMA") to the higher level position of Computer Specialist, yet unlawfully denied her the

raise that accompanies such a promotion.  Defendant again unlawfully denied Plaintiff a raise in

2003, after an alleged hiring freeze ended, and again denied Plaintiff a raise in or about April

2004, when raises were made available to staff.

1

Plaintiff began reporting to Mr. Forker in or about the Fall of 2002. From late 2002 forward, Plaintiff began making internal complaints of discrimination. Plaintiff began making external complaints to the NYSDHR in March 2004 and supplemented those as well. Defendant retaliated against Plaintiff, subjecting her to a hostile work environment, repeatedly abusing her both verbally and in writing, denying her promotions, denying her raises, stripping her of job duties and tools for her job, among other items, including computer duties and internet access, assigning her burdensome, menial and degrading tasks, and other incidents. The retaliation occurred close in time to the complaints and there is a substantial causal connection.

In 2003 and 2004, defendant escalated its unlawful conduct in an ongoing effort to coerce Plaintiff's resignation. In June 2004, Mr. Forker assaulted and physically threatened Plaintiff. Plaintiff had no choice but to take a leave of absence and continued to pursue her internal and external complaints. In 2005, when Plaintiff's leave of absence expired, she sought to return to work for Defendant in a position away from Mr. Forker and others that had maliciously violated her rights, and to a position that would allow her to advance her career. In September 2005, Defendant sent a letter to Plaintiff ordering her to return to work for Mr. Forker. Plaintiff could not return to work for Mr. Forker and was unlawfully constructively discharged.

This lawsuit was filed in 2006. Extensive document and deposition discovery was taken and completed. Plaintiff produced expert reports. Plaintiff has substantial voluminous evidence directly supporting her claims and she is entitled to a jury trial on those claims. Accordingly, and as discussed herein, Defendant's motion for summary judgment should be denied.

For example, Defendant seeks summary judgment on Plaintiff's promotion claims, even though Plaintiff has voluminous evidence that she, Ms. Irby and Ms. Nau were more qualified

than the younger male employees (Tim Forker and Joseph DiLorenzo) promoted ahead of them. Defendant denied Plaintiff promotion to Director Force Accounts and Director Employee Facility Rehabilitation ("EFR") even though she was more qualified than the younger males – Tim Forker and Joseph DiLorenzo - selected for the positions.  Defendant admits it denied Plaintiff an interview for Director EFR, alleging her resume was three pages long, but then admits that it promoted Mr. Forker to Director with a three-page resume.  Defendant alleges that Plaintiff was unqualified for promotion to Director EFR, but admitted in writing that she was qualified.

For example, Defendant seeks summary judgment on Plaintiff's claim that she was unlawfully denied a raise.  Defendant's motion must be denied.  Defendant denied Plaintiff a raise when she was promoted from ATMA to Computer Specialist, even though Defendant admits that a raise accompanies a promotion and that Computer Specialist is a higher level position than ATMA. Defendant alleged a "hiring freeze" yet promoted male employees during the so-called hiring freeze and gave them raises, including Plaintiff's former supervisor, Titus Byaruhanga.  After the hiring freeze ended, Defendant again denied Plaintiff a raise even though she was serving as a Computer Specialist.  Plaintiff continued to file internal complaints and filed an external complaint of discrimination with the NYSDHR.  When raises were made available to staff in or about April 2004, Defendant again unlawfully denied Plaintiff a raise.

Finally, Defendant's voluminous submissions on this motion underscore that there are numerous issues of disputed fact requiring a trial on all of Plaintiff's claims.

3

## FACTS

The Court is referred to Plaintiff's Statement Of Facts filed herewith ("Pl. Stmt.") and the

documents cited therein, which documents are attached to the certification of Plaintiff's counsel.

## ARGUMENT

## POINT ONE

### THE STANDARD FOR A MOTION FOR SUMMARY JUDGMENT IS EXTREMELY RIGOROUS, PARTICULARLY IN DISCRIMINATION ACTIONS

The standard for a motion for summary judgment is extremely rigorous, particularly in

discrimination cases.

Summary judgment cannot be granted unless "the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

In deciding Defendant's motion for summary judgment, this Court must resolve all

ambiguities and draw all reasonable inferences in Plaintiff's favor and against Defendant.  This

Court does not attempt to resolve disputed issue of fact; rather the Court must simply assess

whether there are factual issues to be tried.  This Court cannot grant summary judgment if there

is any evidence in the record from any source from which a reasonable inference could be drawn

in favor of Plaintiff.  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 149-150

(2000); Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000) (reversing summary

judgment for employer in Title VII action); Stern v. Trustees of Columbia Univ., 131 F.3d 305,

311-312 (2d Cir. 1997) (vacating summary judgment for defendant in Title VII action); Cronin v.

Aetna Life Ins. Co., 46 F.3d 196, 202-206 (2d Cir. 1995) (vacating summary judgment for

4

employer in ADEA action); Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d
1219, 1223-1228 (2d Cir. 1994) (reversing summary judgment for employer in action under
ADEA and NYSHRL).

Summary judgment is inappropriate in discrimination actions where, as here, intent and
state of mind are at issue. See, e.g., Graham, 230 F.3d 34, 38; Gallo, 22 F.3d 1219, 1223-1224;
Maresco v. Evans Chemetics, Div. of W.R. Grace & Co., 964 F.2d 106, 113 (2d Cir. 1992)
(reversing summary judgment for employer in ADEA action). In addition, the Second Circuit
has also emphasized that direct evidence is not required in discrimination actions. Plaintiff can
defeat Defendant's summary judgment motion and prevail at trial based solely on circumstantial
evidence. Graham, 230 F.3d 34, 38; Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d
Cir. 1994) (reversing grant of summary judgment for employer in Title VII action); Rosen v.
Thornburgh, 928 F.2d 528, 533 (2d Cir. 1991) (reversing grant of summary judgment for
defendants in Title VII action).

"In an employment discrimination case when . . . the employer's intent is at issue, the trial
court must be especially cautious about granting summary judgment." Kerzer v. Kingly Mfg.,
156 F.3d 396, 400 (2d Cir. 1998). A Plaintiff need not have any "smoking gun" evidence and, in
fact, can defeat a motion for summary judgment based solely on circumstantial evidence. Rosen
v. Thornburgh, 928 F.2d 528, 533; Dister v. Cont'l Group, Inc., 859 F.2d 1108, 1112 (2d Cir.
1988). Because an intent inquiry is fact-specific and requires close attention to the evidence and
credibility of witnesses, summary judgment is often inappropriate in employment discrimination
cases. Rosen, 928 F.2d at 533. Everson v. New York City Transit Authority, Civ. No.
1:02-Cv-1121-ENV-JMA (E.D.N.Y. Feb. 16, 2007), p. 17.

The Second Circuit has repeatedly stated that trial courts must be cautious about granting summary judgment.  At least as recently as April 2008, the Second Circuit again stated: "We have repeatedly expressed the need for caution about granting summary judgment to an employer in a discrimination case where, as here, the merits turn on a dispute as to the employer's intent . . . 'affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.'" Holcomb v. Iona College, 521 F.3d 130, 137 (2nd Cir. 2008) (holding that Title VII prohibits discrimination based on association, including interracial marriage, and vacating grant of summary judgment in favor of college).  Here, the deposition testimony and documents overwhelmingly provide more than sufficient evidence to show discrimination and retaliation.  This Court recently reaffirmed that summary judgment is inappropriate where there is a disputed issue of fact regarding the employer's alleged reasons for the challenged actions.  Nuchman v. City of New York, No. 05-cv-4561 (FB) (LB) (E.D.N.Y. June 30, 2009) (denying employer's motion for summary judgment on disparate treatment claim involving demotion where plaintiff adduced evidence that employer treated persons outside the protected class more favorably and plaintiff demonstrated a disputed issue of fact regarding the employer's alleged reason for its actions).  Here, as in Nuchman, there are numerous disputed issues of fact precluding summary judgment.[1]

Finally, the courts have emphasized that summary judgment is "'a drastic procedural weapon because 'its prophylactic function, when exercised, cuts off a party's right to present his

---

[1]In Nuchman, the Court granted summary judgment on certain other claims, including a claim of hostile work environment.  However, Nuchman is distinguishable based on the facts, since that matter involved only a handful of rude remarks over a five year period.  Unlike Nuchman, this case involves numerous incidents of harassment targeting Plaintiff, including a June 3, 2004 assault, clearly establishing a hostile work environment.

6

case to the jury.'"  Fruchter v. Sossei, No. 94 Civ. 8586 (LBS), 1996 WL 640896, at *4

(S.D.N.Y. Nov. 4, 1996) (Sand, J.) (denying defendants' motions for summary judgment and for

dismissal in action under Title VII and NYSHRL) (citation omitted).

## POINT TWO

### PLAINTIFF'S CLAIMS ARE TIMELY

A.    **The Statute Of Limitations**

Defendant initially raises arguments regarding the applicable statutes of limitations.  (Def.

Br. 3-10).  These arguments lack merit because in March 2004 Plaintiff timely filed a complaint

with the New York State Division of Human Rights.  This complaint was deemed dual filed with

EEOC.  (Pl. Stmnt. Point 19).

Under Title VII and the ADEA, the Plaintiff has 300 days to file an EEOC charge.  42

U.S.C. § 2000e-5(e)(1), (f)(1); 29 U.S.C. § 626(d)(2); Tewksbury v. Ottaway Newspapers, 192

F.3d 322, 326-27 (2d Cir. 1999); Liburd v. Bronx Lebanon Hospital Center, No. 07 Civ. 11316

(HB), (S.D.N.Y. Aug. 18, 2008) (Baer, J.) at p. 5 (citing Ledbetter v. Goodyear Tire & Rubber

Co., 550 U.S. 618, 127 S. Ct. 2162, 2166-67 (2007) and Reinhard v. Fairfield Maxwell, Ltd., 707

F.2d 697, 700 (2d Cir. 1983)).  If an EEOC Charge raises allegations outside the 300-day period,

"the nature of the claim, determines what consideration will be given to the earlier conduct."

Petrosino v. Bell Atlantic, 385 F.3d 210, 220 (2d Cir. 2004).  Under the NYSHRL and

NYCHRL, the plaintiff can file a charge with the state/city agency or file a lawsuit.  The charge

filing period is "one year" and the statute of limitations for the lawsuit is three years.  The

charging party can obtain an administrative convenience dismissal and file a lawsuit.  N.Y. Lab.

L. § 297(9); N.Y.C.P.L.R. § 214(2).

Here, it is undisputed that in March 2004, Plaintiff timely filed a charge of discrimination and retaliation with the New York State Division of Human Rights/EEOC. Plaintiff obtained an administrative convenience dismissal from the NYSDHR and a right to sue letter from EEOC and timely filed this lawsuit. (Def. Br. 4; Pl. Stmnt. Point 29).

Courts apply the limitations on NYSHRL and NYCHRL claims in a similar fashion to claims under Title VII/ADEA. Collier v. Boymelgreen Developers, No. 06 CV 5425 (SJ)(E.D.N.Y. Mar. 24, 2008) at p. 11, citing Cruz v. Coach Stores, Inc., 202 F.3d 560, 565 n. 1 (2d Cir. 2000). Accordingly, Plaintiff's NYSHRL and NYCHRL claims are timely for the same reasons applicable to Plaintiff's Title VII and ADEA claims.

## B.    Incidents Outside The Statute Of Limitations Are Admissible At Trial As Relevant Background Evidence Of Defendant's Discriminatory And Retaliatory Motive

All incidents within the applicable statute of limitations are actionable claims. Moreover, incidents of discrimination and retaliation that are deemed to occur outside the applicable statute of limitations are nevertheless admissible at trial as relevant background evidence of Defendant's discriminatory and retaliatory motive. Petrosino, 385 F.3d 210, 220 (2d Cir. 2004), citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002); see also Liburd at p. 5 (allowing "instances where the elements forming a cause of action span more than [300] days [ . . . .] Say, for instance, an employer forms an illegal  discriminatory intent towards an employee but does not act on it until [301] days later. The charging period would not begin to run until the employment practice was executed on day [301] because until that point the employee had no cause of action. The act and intent had not yet been joined.' [Ledbetter 550 U.S. 618, 127 S. Ct. 2162, 2171 n.3 (2007)]; see also Morgan, 536 U.S. [101] at 113 (employee may use 'past acts'

8

taking place before the 300-day time period as background evidence in support of a timely claim')").

**POINT THREE**

**THE COURT SHOULD DENY DEFENDANT'S MOTION AS TO TIMELINESS BECAUSE THE INCIDENTS AT ISSUE ARE TIMELY AND/OR ARE ADMISSIBLE AT TRIAL AS RELEVANT BACKGROUND EVIDENCE OF DEFENDANT'S DISCRIMINATORY/RETALIATORY MOTIVE**

**A.     Defendant's Arguments**

Defendant argues that "all alleged discriminatory actions which occurred in 1998 through 2002 are time barred." (Def. Br. 4). Defendant also argues that Plaintiff filed an EEOC Charge on March 23, 2004 and, therefore, any incident prior to May 26, 2003 is not covered by the "300 day" EEOC Charge filing period under Title VII and ADEA. Defendant argues that since Plaintiff filed this lawsuit on September 1, 2006, any incident prior to September 1, 2003 is not covered by the three-year statute of limitations under NYCHRL or NYSHRL (Def. Br. 4).

Defendant disputes only four items: (1) Plaintiff's claims regarding unlawful denial of software in 1998, (2) Plaintiff's allegations regarding a discriminatory promotion decision in 2000 (involving Director EFR), (3) Plaintiff's claims regarding discriminatory promotion decisions in 2002 (involving "Acting Director EFR" and "Acting Director Force Accounts"), and (4) Plaintiff's claims that she was unlawfully denied a raise when she was promoted in 2002 from ATMA to the higher level position of Computer Specialist. (Def. Br. 3-4).

The Court should deny Defendant's motion. First, Plaintiff's allegations state a timely claim for relief. Second, certain allegations raised by Plaintiff are not intended to be distinct

9

claims for relief, but are simply background evidence admissible at trial regarding Defendant's discriminatory motive.

**B.      The 1998 Denial Of Software Is An Adverse Incident And Occurred Under
         Circumstances Reflecting Discrimination**

Defendant argues that Plaintiff cannot maintain a claim for unlawful denial of software in 1998 on the grounds that such a claim is not discriminatory or adverse. (Def. Br. 6-7). Defendant's argument misses the mark.

First, the factual record establishes that Defendant discriminated against Plaintiff in denying her software in 1998. (Pl. Stmnt. Point 7). Briefly, in 1998, Plaintiff and Richard Burbridge (younger male) were working in Subways' Capital Programs. Mr. Burbridge requested that Defendant provide him with two copies of Microsoft's Visual Studio, at a price of more than $1,000 each. Plaintiff requested that Defendant provide her with one copy of Lotus SmartSuite, at about $250. Plaintiff needed Lotus software for her work, including her work on the Quarterly Report that she prepared. Craig Stewart granted Mr. Burbridge's request and denied Plaintiff's request. Mr. Stewart's proffered reason for denying Plaintiff's request was lack of funds. This was a pretext for unlawful discrimination based on age and sex because, among other items, Mr. Stewart granted Mr. Burbridge's request for substantially more expensive computer software. (Compl. ¶¶ 34-37; Pl. Stmnt. Point 7; Def. Br. 6-7).

Second, Defendant simply argues that there was no discrimination because "Burbridge required Visual Basic to perform his job and plaintiff did not require LOTUS to perform her job." (Def. Br. 7). This is baseless. Mr. Stewart's alleged reason for denying Plaintiff's request for Lotus software was "cost" <u>not</u> Plaintiff's need for the software, and Mr. Stewart's stated

10

reason was a pretext because Mr. Stewart granted Mr. Burbridge's request for substantially more expensive software.  Moreover, Plaintiff indisputably needed the Lotus software for her position and to prepare quarterly reports that were among her primary duties.  According to Defendant, in 2004, after Plaintiff had filed internal complaints of discrimination, Defendant suddenly purchased Lotus software, which completely undermines Defendant's argument that Lotus software was not necessary for Plaintiff's position.  (Pl. Stmnt. Points 2, 3, 7, 14-D; Pl. Dep. Exh. 140, January 2004 request for internet access).

In any event, the discriminatory denial of software in 1998 is admissible at trial as background evidence of Defendant's unlawful discriminatory motive.

## C.     The 2000 Discriminatory Promotion Decision Regarding Director EFR Is Admissible At Trial As Background Evidence Of Defendant's Unlawful Discriminatory Motive

Defendant refers to Plaintiff's allegations about a discriminatory promotion decision in 2000 regarding Director EFR.  (Def. Br. 7).  Defendant's argument misses the mark.  As detailed in Plaintiff's Statement of Facts, in 2000, Defendant unlawfully denied Dawn Irby promotion to the available position of Director EFR.  Defendant promoted Tim Forker, a younger less qualified male, to the position.  As of 2000, Ms. Irby had substantial experience in EFR while Mr. Forker, hired in November 1999, had none.  Director Titus Byaruhanga, who supervised Ms. Irby, evaluated and rated Ms. Irby as most qualified for the promotion and advocated for her promotion to Director EFR.  However, Defendant nevertheless promoted Mr. Forker to the position and unlawfully denied Ms. Irby a promotion.  (Pl. Stmnt. Points 4, 8, 9).  In 2004, Defendant again unlawfully denied Ms. Irby promotion to Director, EFR.  This time, Defendant promoted Joseph DiLorenzo, to Director EFR.  Notably, in 2000, Ms. Irby and Mr. DiLorenzo

11

had both applied for Director EFR and the hiring panel expressly held that Ms. Irby was more qualified than Mr. DiLorenzo for the position of Director EFR. Nothing had changed as of 2004. (Pl. Stmnt. Points 4, 20, 11).

These and other instances of discrimination against older female employees, are relevant background evidence to establish motive - i.e., that Defendant has engaged in a pattern of promoting younger male employees ahead of more qualified older female employees.

**D.     The 2002 Appointment of Acting Directors Is An Adverse Incident Reflecting Unlawful Discrimination By Defendant**

Defendant's arguments regarding promotions to Acting Director positions in 2002 misses the mark. (Def. Br. 8). As detailed in Plaintiff's Statement of Facts, in 2002, Defendant unlawfully denied Plaintiff and Evelyn Nau (another highly qualified older female employee) promotion to Acting Director, Force Accounts. Defendant even denied Plaintiff and Ms. Nau the opportunity to apply for Acting Director Force Accounts and simply appointed Mr. Forker, a younger less qualified male employee, to the position. (Pl. Stmnt. Points 2, 3, 5, 10). This incident is an adverse action and discriminatory action against Plaintiff. At a minimum, the incident is admissible at trial as relevant background evidence to establish Defendant's motive.

Similarly, as detailed in Plaintiff's Statement of Facts, in 2002, Defendant unlawfully denied Dawn Irby (a highly qualified, older female) promotion to Acting Director EFR and appointed Joseph DiLorenzo (younger less qualified male) and Ms. Irby to serve as Acting co-Directors in alternating months. This was a discriminatory action against Ms. Irby, because there was no legitimate basis to require Ms. Irby to share Acting Director status with Mr. DiLorenzo, a younger less qualified male. As noted above, in fact, in 2000, Ms. Irby and Mr. DiLorenzo had

12

both applied for Director EFR, and the hiring panel expressly held that Ms. Irby was more qualified than Mr. DiLorenzo for the position. (Pl. Stmnt. Points 4, 9, 11).

As of 2002, nothing had changed and Ms. Irby was still substantially more qualified for Director EFR than Mr. DiLorenzo. In the Fall of 2002, Defendant appointed Ms. Irby and Mr. DiLorenzo as Acting co-Directors to give Mr. DiLorenzo experience and pre-select him for Director EFR once the position was formally posted. (Pl. Stmnt. Points 4, 11). This incident is admissible at trial as relevant background evidence to establish Defendant's discriminatory motive. In 2004, Defendant unlawfully denied Ms. Irby (and Plaintiff) promotion to Director EFR and gave the job to Mr. DiLorenzo (younger male), who was less qualified than both Plaintiff and Ms. Irby. (Pl. Stmnt. Points 2, 3, 4, 20).

**E.      Defendant's Unlawful Denial Of A Raise To Plaintiff When She Was Promoted To Computer Specialist Is An Adverse Incident, A Discriminatory Incident, And Is A Timely Claim**

Defendant argues that Plaintiff's claim regarding denial of a raise in 2002 is time barred and unsupported by the record. Specifically, Defendant argues: (1) Defendant appointed Plaintiff Computer Specialist to retain her in the Force Accounts Unit; (2) Plaintiff was denied a raise with the appointment to Computer Specialist because Plaintiff's salary remained the same and was already above the minimum salary for Computer Specialist; (3) in November 2002 Plaintiff accused Pam Noonan Coppola (Subway Support, Department of Subways) of discrimination but now claims that Craig Stewart discriminated against her; and (4) there was no discrimination against Plaintiff (Def. Br. 8-10).

As discussed below, Defendant's argument is baseless.

13

First, the denial of a raise is an adverse incident and the result of unlawful discrimination against Plaintiff. As set forth in Plaintiff's Statement Of Facts, in October 2002, Plaintiff was promoted from the position of Associate Transit Management Analyst (ATMA) to the higher level position of Computer Specialist. Under Defendant's policies and practices, this was a promotion. Defendant admits that a raise accompanies a promotion and, moreover, the salary range for Computer Specialist allowed for a raise for Plaintiff from her current salary. Plaintiff was told by Mr. Byaruhanga and HR personnel that she would receive a raise with a promotion to Computer Specialist. However, Defendant unlawfully denied Plaintiff a raise when she was promoted to the higher level position of Computer Specialist. (Pl. Stmnt. Point 12).

Second, during the same time frame that Plaintiff was promoted to Computer Specialist and denied a raise, Defendant promoted Plaintiff's former supervisor, Titus Byaruhanga (male) and gave him a raise. Thus, raises were available at the time Defendant denied Plaintiff a raise. (Pl. Stmnt. Points 10, 12, 13).

Third, the decision to deny Plaintiff a raise was made by "management", i.e, Craig Stewart, head of Plaintiff's unit. This was established during Defendant's alleged investigation of Plaintiff's November 2002 internal complaint of discrimination. However, at the time Defendant denied Plaintiff a raise in October 2002, Defendant concealed from Plaintiff that Mr. Stewart had refused to request a raise for Plaintiff and intentionally deceived Plaintiff into believing that Pam Noonan-Coppola, Subways Support, denied her a raise, to cover up the discrimination. (Pl. Stmnt. Points 12, 13).

Finally, Plaintiff's claim is timely. As set forth in detail in Plaintiff's Statement Of Facts, in October 2002, Defendant unlawfully denied Plaintiff a raise. (Pl. Stmnt. Point 12) . In

14

November 2002, Plaintiff filed an internal complaint of discrimination and continued to

complain about the matter throughout 2003. (Pl. Stmnt. Point 13).  According to Defendant, in

August 2003, a "hiring freeze" ended.  At that time, Defendant again denied Plaintiff a raise,

even though Plaintiff was working as a Computer Specialist and the "hiring freeze" that

Defendant had referred to in denying Plaintiff a raise had expired.  (Pl. Stmnt. Point 13 and ¶

566).  In October 2003, Plaintiff submitted a request to return to her prior position of ATMA

because Defendant had unlawfully denied her a raise with her promotion and, because the new

position was to be unionized, Plaintiff's compensation was actually going to decrease.  (Pl.

Stmnt. Point 15).  Moreover, Defendant unlawfully stripped Plaintiff of computer work (Pl.

Stmnt. Point 14-A) and unlawfully denied her internet access, (Pl. Stmnt. Point 14-D), all of

which was necessary for her duties.  Since incidents occurred through at least October 2003, the

denial of a raise is timely for purposes of Plaintiff's claims under Title VII, the ADEA, the

NYSHRL and the NYCHRL. (Pl. Stmnt. Points 12, 13, 14, 15).

## POINT FOUR

### PLAINTIFF HAS ESTABLISHED A HOSTILE WORK ENVIRONMENT AND, THEREFORE, THE COURT SHOULD DENY DEFENDANT'S MOTION REGARDING PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIMS

A.     **Standard For Hostile Work Environment**

Defendant alleges that Plaintiff has failed to adduce sufficient evidence of a hostile work

environment. (Def. Br. 10-14).  Defendant argues that Plaintiff's evidence is limited to (1)

"Plaintiff's time sheets" and (2) "an unfriendly discussion about Plaintiff's failure, for over three

months, to complete an important assignment." (Def. Br. 10).  Defendant's argument is baseless

and misrepresents the extensive record in this case, which record includes numerous incidents

supporting the claims.  A hostile work environment can be established by "a single incident [that] was extraordinarily severe, or that a series of incidents [was] 'sufficiently continuous and concerted' to have altered the conditions of her working environment.'"  Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002) (quoting Cruz, 202 F.3d 560, 570); accord Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-23 (1993); Krikelis v. Vassar College, No. 06-CV-4203 (KMK) (S.D.N.Y. Aug. 7, 2008) at p. 21.

The Supreme Court has "set forth a non-exclusive list of factors" to consider, including "the frequency of the  discriminatory conduct; its severity; [and] whether it is physically threatening or humiliating, or a mere offensive utterance. . . ." Raniola v. Bratton, 243 F.3d 610, 620 (2d Cir. 2001) (quoting Harris, 510 U.S. 17, 23).  The Court considers the "totality of circumstances" and the "the quantity, frequency, and severity of the incidents" in order to "obtain a realistic view of the work environment," Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 64 (1986); Richardson v. N.Y.S. Dep't of Corr. Serv., 180 F.3d 426, 437 (2d Cir. 1999) (internal quotation marks omitted) (abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006)).  "'[A]ppalling conduct alleged in prior cases should not be taken to mark the boundary of what is actionable.'" Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 70 (2d Cir. 2000) (quoting Richardson, 180 F.3d 426, 439).

**B.    Plaintiff Established A Hostile Work Environment**

Here, Plaintiff clearly established a hostile work environment.  Plaintiff's hostile work environment claim is based on numerous incidents, supported by both voluminous documentary evidence and deposition testimony.  The numerous incidents establishing a hostile work environment were set forth in detail in Plaintiff's internal complaints to Defendant, external

16

complaints to the New York State Division Of Human Rights, lawsuit Complaint, Plaintiff's

various documents produced during discovery, and deposition testimony.  The fact that

Defendant's motion completely ignores many relevant incidents and documents does not in any

way narrow or limit the scope of Plaintiff's claims.  (Pl. Stmnt. Points 6, 13, 17, 19, 22, 24).

For example, Plaintiff's hostile work environment claims is demonstrated by, among

other items, the repeated incidents of discrimination, harassment and retaliation.  Defendant did

not subject persons outside Plaintiff's protected class to such discrimination, harassment and

retaliation.  Some of these incidents are outlined below:

* **October 2002 forward:** Unlawfully denying Plaintiff a raise with her promotion
  to Computer Specialist (Pl. Stmnt. Point 12);

* **November 2002/December 2002:** Unlawfully denying Plaintiff computer work
  after she became a Computer Specialist in October 2002 and after Plaintiff filed
  her November 2002 complaint of discrimination (Pl. Stmnt. Points 13, 14-A);

* **January 2003 forward:** Assigning Plaintiff various menial and denigrating tasks
  (Pl. Stmnt. Point 14-B; Compl. ¶ 64);

* **April 2003/September 2003:** Harassing Plaintiff in April 2003 and again in
  September 2003 with allegations that she failed to properly record her time and/or
  swipe the time clock, including a buckslip dated April 21, 2003 and an email from
  Mr. Forker dated September 18, 2003 (Pl. Dep. Exh. 145; Pl. Stmnt. Point 14-C);

* **August 2003:** Unlawfully denying Plaintiff a raise in August 2003 and thereafter,
  when the alleged "hiring freeze", which Defendant alleged precluded a raise,
  expired (Pl. Stmnt. Point 13 and ¶ 566);

* **September 2003/October 2003; January 2004:** Unlawfully denying Plaintiff
  internet access when written requests were submitted in September 2003, October
  2003 and January 2004 documenting Plaintiff's need for internet access as a
  Computer Specialist and as an ATMA, including to produce the Quarterly Report,
  making Plaintiff's job much more difficult to perform (Pl. Stmnt. Point 14-D);

* **November 2003:** Unlawful written abuse and harassment by Mr. Forker against
  Plaintiff including writing on Plaintiff's time sheet "Loretta-for a computer

17

specialist you seem to have a very hard time with this technology" (Pl. Stmnt. Point 15);

* **January 2004-April 2004:** Unlawfully denying Plaintiff's January 2004 application for promotion to Director Force Accounts and harassing conduct by Senior Director Ken Pearce during Plaintiff's January 23, 2004 "interview" for that position (Pl. Stmnt. Point 16);

* **Post January 23, 2004:** Plaintiff suffered a documented substantial increase in blood pressure in 2004 following Defendant's discriminatory, harassing and retaliatory conduct by Mr. Pearce at Plaintiff's January 23, 2004 "interview" for Director Force Accounts  (Pl. Stmnt. Points 26, 28);

* **Post January 23, 2004:** Unlawful defamatory statements by Mr. Stewart, Mr. Pearce and Mr. Forker about Plaintiff in 2004, made to Plaintiff's co-workers, made in writing, and made to Defendant's EEO investigators, following Plaintiff's January 2004 "interview" for Director Force Accounts and following Plaintiff's February 2004 internal complaint (Pl. Stmnt. Point 18);

* **March 2004-June 2004:** Unlawfully denying Plaintiff's March 2004 application for promotion to Director EFR and unlawfully denying Plaintiff an interview for that position, even though she was fully qualified for it (Pl. Stmnt. Point 20);

* **March 2004 forward:** Overloading Plaintiff with burdensome assignments with unreasonable and, indeed, impossible deadlines throughout 2004, including directing Plaintiff in March 2004 to write numerous procedures within two days, as confirmed by emails between Mr. Forker and Plaintiff (Pl. Stmnt. Points 21-A, 21-B);

* **March-May 2004:** Failing and refusing to provide feedback to Plaintiff on pending assignments, including failing to respond to March 2004 emails until May 2004 (Pl. Stmnt. Points 21-A, 21-B);

* **April 2004:** Unlawfully denying Plaintiff a raise in April 2004 when raises were made available to staff (Pl. Stmnt. Point 21-C);

* **Mid-May 2004:** Unlawful harassment and verbal abuse by Mr. Forker against Plaintiff for working through lunch on May 14, 2004 (Pl. Stmnt. Point 21-D);

* **May 27, 2004:** Unlawful harassing and defamatory accusations that Plaintiff took too much time to complete her assignments, including the quarterly report for the first quarter of 2004, when in fact Plaintiff had timely produced that report and other reports for years (Pl. Stmnt. Point 21-E);

* **June 3, 2004:** Mr. Forker's unlawful assault on Plaintiff on June 3, 2004 and threats of violence and/or other action against her, as confirmed by a detailed investigation and report dated August 9, 2004 and defamatory statements about Plaintiff (Pl. Stmnt. Points 22, 27);

* **June 15, 2004:** Unlawful harassing and defamatory accusations in mid June 2004 that Plaintiff was AWOL, including an allegation that she was AWOL on June 4, 2004 (Pl. Stmnt. Point 23); and

* **June 30, 2004:** Unlawful harassing and defamatory statements on Plaintiff's timesheets, including without limitation in June 2004 (Pl. Stmnt. Point 23).

Even the few incidents listed by Defendant in its motion support Plaintiff's claim of hostile work environment.

C.   **Plaintiff's Hostile Work Environment Claims Are Timely**

Plaintiff's hostile work environment claims are timely. As set forth in Plaintiff's Statement Of Facts, and as Defendant admits, on or about March 23, 2004, Plaintiff timely filed charges with the NYSDHR (dual filed with EEOC). (Def. Br. 4). Thereafter, Plaintiff supplemented her original NYSDHR charge with additional incidents, all of which raise timely claims for trial. In 2006, Plaintiff obtained an administrative convenience dismissal from NYSDHR and a right to sue letter from EEOC and timely filed this lawsuit. (Pl. Stmnt. Points 19, 29).

Plaintiff's hostile work environment claim is not limited to incidents solely within the "300 day" EEOC Charge filing period. A hostile work environment claim under Title VII and ADEA can be maintained based upon events outside the "300 day" EEOC Charge filing period, as long as one or more events constituting the hostile work environment occurred within the "300 day" period. See, e.g., Petrosino, 385 F.3d 210, 220 (2d Cir. 2004), citing Morgan, 536 U.S. 101, 117 (2002) (once a single harassing act within 300 days of filing is shown, "a court and jury may

19

consider the entire time period of the hostile environment in determining liability"). The same

reasoning applies with equal force to NYSHRL and NYCHRL claims.

Here, Plaintiff timely filed a charge with the NYSDHR/EEOC that raised incidents

constituting a hostile work environment within the "300 day" EEOC Charge filing period and

within the "one year" NYSDHR charge filing period. To the extent that Plaintiff also alleged

any incidents outside the "300 day" or "one year" charge filing period, such incidents are

properly considered as part of Plaintiff's hostile work environment claim under the applicable

case law.

Moreover, all of the incidents of discrimination, harassment and retaliation that occurred

subsequent to the filing of Plaintiff's NYSDHR Charge in March 2004 are per se timely and are

within the scope of Plaintiff's actionable claims.

Accordingly, Plaintiff's hostile work environment claim is indisputably timely.

## POINT FIVE

### PLAINTIFF HAS ESTABLISHED HER CLAIMS OF RETALIATION AND THEREFORE, THE COURT SHOULD DENY DEFENDANT'S MOTION REGARDING PLAINTIFF'S CLAIMS OF RETALIATION

### A.    The Standard For Retaliation

Defendant seeks summary judgment on Plaintiff's retaliation claims. Defendant argues

that Plaintiff's claim of retaliation is based solely on "a few discussions and a note about her time

sheets and certain work assignments." (Def. Br. 14). The Court should deny Defendant's motion

for summary judgment because Plaintiff's claims of retaliation involve numerous retaliatory acts

well beyond the few items listed by Defendant and there is an extensive record directly

supporting Plaintiff's claims.

20

The elements of a claim of retaliation are: (1) Plaintiff engaged in a protected activity about which the employer was aware; (2) an adverse employment action; and (3) a causal connection. Collins v. N.Y. City Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002); accord Wilson v. N.Y.C. Dep't of Trans., 2005 WL 2385866, at *16 (S.D.N.Y., Sept. 28, 2005)(citing Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996)). All elements are established here.

An adverse action is an action "that would have been materially adverse to a reasonable employee or job applicant," or those that would "dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington Northern & Santa Fe Ry., 548 U.S. 53, 57 (2006). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003); see also Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000). An increase of workload disproportionate to similarly-situated employees can constitute an adverse action. See Feingold v. New York, 366 F.3d 138, 152-53 (2d Cir. 2004).

**B.     Plaintiff Established Her Claims Of Retaliation**

Here, there are numerous incidents of unlawful retaliation. Some of the incidents are outlined below:

* **January 2003 forward:** Assigning Plaintiff various menial and denigrating tasks (Pl. Stmnt. Point 14-B; Compl. ¶ 64);

* **April 2003/September 2003:** Harassing Plaintiff in April 2003 and again in September 2003 with allegations that she failed to properly record her time and/or swipe the time clock, including a buckslip dated April 21, 2003 and an email from Mr. Forker dated September 18, 2003 (Pl. Dep. Exh. 145; Pl. Stmnt. Point 14-C);

21

* **August 2003:** Unlawfully denying Plaintiff a raise in August 2003 and thereafter, when the alleged "hiring freeze", which Defendant alleged precluded a raise, expired (Pl. Stmnt. Point 13 and ¶ 566);

* **September 2003/October 2003; January 2004:** Unlawfully denying Plaintiff internet access when written requests were submitted in September 2003, October 2003 and January 2004 documenting Plaintiff's need for internet access as a Computer Specialist and as an ATMA, including to produce the Quarterly Report, making Plaintiff's job much more difficult to perform (Pl. Stmnt. Point 14-D);

* **November 2003:** Unlawful written abuse and harassment by Mr. Forker against Plaintiff including writing on Plaintiff's time sheet "Loretta-for a computer specialist you seem to have a very hard time with this technology" (Pl. Stmnt. Point 15);

* **January 2004-April 2004:** Unlawfully denying Plaintiff's January 2004 application for promotion to Director Force Accounts and harassing conduct by Senior Director Ken Pearce during Plaintiff's January 23, 2004 "interview" for that position (Pl. Stmnt. Point 16);

* **Post January 23, 2004:** Plaintiff suffered a documented substantial increase in blood pressure in 2004 following Defendant's discriminatory, harassing and retaliatory conduct by Mr. Pearce at Plaintiff's January 23, 2004 "interview" for Director Force Accounts  (Pl. Stmnt. Points 26, 28);

* **Post January 23, 2004:** Unlawful defamatory statements by Mr. Stewart, Mr. Pearce and Mr. Forker about Plaintiff in 2004, made to Plaintiff's co-workers, made in writing, and made to Defendant's EEO investigators, following Plaintiff's January 2004 "interview" for Director Force Accounts and following Plaintiff's February 2004 internal complaint (Pl. Stmnt. Point 18);

* **March 2004-June 2004:** Unlawfully denying Plaintiff's March 2004 application for promotion to Director EFR and unlawfully denying Plaintiff an interview for that position, even though she was fully qualified for it (Pl. Stmnt. Point 20);

* **March 2004 forward:** Overloading Plaintiff with burdensome assignments with unreasonable and, indeed, impossible deadlines throughout 2004, including directing Plaintiff in March 2004 to write numerous procedures within two days, as confirmed by emails between Mr. Forker and Plaintiff (Pl. Stmnt. Points 21-A, 21-B);

* **March-May 2004:** Failing and refusing to provide feedback to Plaintiff on pending assignments, including failing to respond to March 2004 emails until May 2004 (Pl. Stmnt. Points 21-A, 21-B);

* **April 2004:** Unlawfully denying Plaintiff a raise in April 2004 when raises were made available to staff (Pl. Stmnt. Point 21-C);

* **Mid-May 2004:** Unlawful harassment and verbal abuse by Mr. Forker against Plaintiff for working through lunch on May 14, 2004 (Pl. Stmnt. Point 21-D);

* **May 27, 2004:** Unlawful harassing and defamatory accusations that Plaintiff took too much time to complete her assignments, including the quarterly report for the first quarter of 2004, when in fact Plaintiff had timely produced that report and other reports for years (Pl. Stmnt. Point 21-E);

* **June 3, 2004:** Mr. Forker's unlawful assault on Plaintiff on June 3, 2004 and threats of violence and/or other action against her, as confirmed by a detailed investigation and report dated August 9, 2004 and defamatory statements about Plaintiff (Pl. Stmnt. Points 22, 27);

* **June 15, 2004:** Unlawful harassing and defamatory accusations in mid June 2004 that Plaintiff was AWOL, including an allegation that she was AWOL on June 4, 2004 (Pl. Stmnt. Point 23);

* **June 30, 2004:** Unlawful harassing and defamatory statements on Plaintiff's timesheets, including without limitation in June 2004 (Pl. Stmnt. Point 23); and

* **September 2005:** Unlawful constructive discharge (Pl. Stmnt. Point 28).

## C.   Defendant's Denial Of Computer Work To Plaintiff, When She Was A "Computer Specialist", Was Retaliation

Defendant argues that Plaintiff cannot maintain a retaliation claim based on unlawful denial of computer work. (Def. Br. 16-17). Defendant is wrong. On or about October 22, 2002, Plaintiff was placed in the position of Computer Specialist. (Pl. Stmnt. Point 12). On November 7, 2002, Plaintiff filed a protected complaint of discrimination. (Pl. Stmnt. Point 13). Plaintiff held the position of Computer Specialist from October 2002 to the Fall of 2003, when Plaintiff

returned to her prior position of ATMA.  Defendant documented that Plaintiff's job duties as

Computer Specialist expressly included computer work.  (Pl. Stmnt. Points 12, 13, 15).

     As part of Defendant's unlawful discrimination and retaliation, "Mr. Forker told Plaintiff

that he did not have any Computer Specialist work for her to perform.  He denied Plaintiff's

requests to do Computer Specialist work and ordered Plaintiff to perform various menial and

denigrating tasks." (Compl. ¶ 64).  Moreover, beginning in or about September 2003, while

Plaintiff was a Computer Specialist, Mr. Stewart unlawfully stripped Plaintiff of internet access,

which Plaintiff had since 1998 and which was necessary for her duties as ATMA and Computer

Specialist.  These incidents constituted discrimination, harassment and retaliation.  (Pl. Stmnt.

Point 14).

     Defendant's action constitutes significantly diminishing her material responsibilities and

actionable retaliation.

     Defendant argues that computer work "belonged to another employee." (Def. Br. 16).

This is contradicted by the record.

     Plaintiff had extensive computer duties as an ATMA.  (Pl. Stmnt. Points 2, 3).  In

October 2002, Plaintiff was promoted from ATMA to the higher level position of Computer

Specialist and had computer duties.  (Pl. Stmnt. Points 12, 13, 14-D).

     Defendant executed a position evaluation request ("PER"), detailing Plaintiff's job duties

as Computer Specialist and a material part of those job duties included computer work. (Pl.

Stmnt. Point 12).  Moreover, Defendant alleges that Plaintiff's job duties as ATMA  – which

included computer duties -- continued when she was a Computer Specialist.  (Def. Br. 16-17).

Clearly then, Mr. Forker's denial of computer work to Plaintiff was plainly an act of ongoing

discrimination and, in fact, retaliation for Plaintiff's November 2002 complaint of discrimination. (Pl. Stmnt. Point 13, 14-A).[2]

Defendant argues that Plaintiff relinquished her computer specialist position and returned to ATMA because the position unionized. (Def. Br. 17). In October 2003, Plaintiff requested a return to her prior position of ATMA because Defendant had unlawfully denied her a raise with her promotion and, because the new position was to be unionized, Plaintiff's compensation was actually going to decrease. Moreover, Defendant unlawfully stripped Plaintiff of computer work and her internet access, all of which was necessary for her duties as Computer Specialist. Clearly, Defendant took adverse action against Plaintiff in denying her computer work and denying her internet access, all of which materially affected her employment, contributed to her returning to the ATMA position, and is an actionable claim of retaliation. (Pl. Stmnt. Point 14, 15).

**D.    Forker's November 2003 Note On Plaintiff's Time Sheet Is Actionable Retaliation**

Regarding Plaintiff's "time sheets," Defendant admits that in November 2003, Mr. Forker wrote on Plaintiff's time sheet "Loretta-for a computer specialist you seem to have a very hard time with this technology." (Def. Br. 17-18). Defendant admits that Plaintiff considered this to be a "humiliating insult." Mr. Forker's conduct was harassment. (Def. Br. 18). Mr. Forker targeted Plaintiff with this written abuse and did so on behalf of Defendant and, particularly Mr. Stewart, who harbored animus against Plaintiff because she had filed an internal complaint of discrimination regarding denial of a raise. Plaintiff maintains that Mr. Forker wrote this

---

[2]Defendant, in using the term "another employee," is apparently referring to John Jue. While Mr. Jue was designated as a TIS liaison, he failed to provide the services required by Plaintiff's Unit. (Pl. Stmnt. Point 14-D and ¶ 584).

harassing note on Plaintiff's time sheet as an ongoing act of discrimination and retaliation against Plaintiff. The incident supports Plaintiff's claims of hostile work environment discrimination. (Pl. Stmnt. Point 15).

**E.     Forker's Verbal Abuse Toward Plaintiff For Working Through Lunch In May 2004 For Coverage Is Actionable Retaliation**

Mr. Forker's actions regarding Plaintiff's May 2004 time sheets is an act of unlawful retaliation. (Def. Br. 18). From time to time, Plaintiff worked through lunch (without seeking additional pay), including to provide coverage for her entire Unit. Plaintiff testified that from time to time, she quickly swiped her time card to show an "in" and an "out" for Defendant's record keeping purposes. On May 14, 2004, Plaintiff worked through lunch and did so. Mr. Forker unlawfully harassed Plaintiff for working through lunch and, in fact, "berated" her. Plaintiff's records indicate that this unlawful berating took place on or about May 19, 2004. Similarly, Mr. Pearce verbally abused Plaintiff for working through lunch. (Pl. Stmnt. Point 21-D). Plaintiff maintains that Mr. Forker berated her as an ongoing act of discrimination and retaliation against Plaintiff. Such conduct was clearly wrongful. The incident supports Plaintiff's claims of hostile work environment discrimination and supports her claims for damages in this litigation. (Pl. Stmnt. Point 21-D).

**F.     Forker's Unlawful Assault On June 3, 2004 Is Retaliation**

Defendant alleges that on June 3, 2004, Mr. Forker had a "momentary expression of frustration" with Plaintiff, "briefly raised his voice" and "banged his desk once." (Def. Br. 18-19). Defendant's arguments are baseless and are simply an effort to downplay Mr. Forker's unlawful June 3, 2004 assault against Plaintiff. (Pl. Stmnt. Points 22, 27).

As set forth in Plaintiff's Statement of Facts, on June 3, 2004, Mr. Forker unlawfully assaulted, verbally attacked and threatened Plaintiff, and violently hit his desk while yelling loudly at Plaintiff. He said, among other items, "Do you want to start something", which was clearly a threat of violence and/or other action against Plaintiff. (Compl. ¶ 102). The record reflects that Mr. Forker engaged in this unlawful conduct. In fact, there was a detailed investigation, numerous witness interviews, and a report dated August 9, 2004, all of which fully corroborated Plaintiff's claim. (Pl. Stmnt. Points 22, 27).

Defendant raises other allegations that are belied by the record. Defendant argues that Plaintiff installed her own Lotus software on the computer system because she was uncomfortable with Microsoft Office. (Def. Br. 18). As detailed in Plaintiff's Statement of Facts, Plaintiff installed her own copy of Lotus software on a computer because Microsoft software was malfunctioning, she needed Lotus software to prepare Quarterly Reports, and Mr. Stewart unlawfully denied her 1998 request to purchase Lotus software. (Pl. Stmnt. Points 7, 14-D, 17).

Defendant argues that Mr. Forker asked Plaintiff to prepare a manual for production of the Quarterly Report using Microsoft Office because he knew that she was looking to leave the Unit. (Def. Br. 18-19). As detailed in Plaintiff's Statement of Facts, Mr. Forker directed Plaintiff to write a manual to harass Plaintiff, overload her with work, and coerce her resignation. As of 2002, a manual already existed, and Mr. Forker had been made aware of that manual but showed no interest. In 2004, Mr. Forker, seeking to coerce Plaintiff's resignation with ongoing discrimination, harassment and retaliation, suddenly demanded that she prepare a new manual. (Pl. Stmnt. Points 21-A, 21-B).

27

In an obvious effort to justify Mr. Forker's unlawful assault on June 3, 2004, Defendant states that on June 3, Mr. Forker sent Plaintiff a reminder email regarding a task and Plaintiff deleted it. (Def. Br. 19). This is disingenuous. As detailed in Plaintiff's Statement of Facts, Plaintiff had a March 9, 2004 task request from Mr. Forker in her "in box" and Mr. Forker's June 3, 2004 email was duplicative of that March 9, 2004 task request. Ms. Locicero explained this to Mr. Forker on June 3, 2004. Clearly then, Mr. Forker had no justification for his behavior and, certainly, there can be no justification for a threat of violence. (Pl. Stmnt. Points 22, 27).

Defendant argues that Plaintiff had intentionally failed to prepare the manual. (Def. Br. 19). This is false. As detailed in Plaintiff's Statement of Facts, in 2004, Plaintiff was working on numerous projects assigned to her by Mr. Forker. She was also working on a quarterly report that needed to be completed before she could write a manual for how to prepare a quarterly report. Plaintiff completed the manual and wrote the procedures requested by Mr. Forker. (Pl. Stmnt. Points 21-A, 21-B, 22, 27).

Defendant states that Mr. Forker simply "briefly raised his voice ... and, according to plaintiff, he banged his desk once." (Def. Br. 19). Defendant argues that this was not "gender animosity." (Def. Br. 19). This is false. As detailed in Plaintiff's Statement of Facts, on June 3, 2004, Mr. Forker unlawfully assaulted and threatened Plaintiff. He singled her out with such discrimination, harassment and retaliation, because of her age, sex and protected activities. Mr. Stewart admitted that Mr. Forker's conduct constituted a "serious infraction", yet Mr. Stewart took no action against Mr. Forker. Instead, Defendant gave Mr. Forker a rating of "excellent" for his job performance in 2004. (Pl. Stmnt. Points 22, 27).

**G.      Forker's Abuse Of Plaintiff For Going to Labor Relations On June 4, 2004 Is
Actionable Retaliation**

Defendant argues that Mr. Forker directed Plaintiff to correct her time sheet for June 4,

2004. (Def. Br. 19). In fact, as detailed in Plaintiff's Statement of Facts, Mr. Forker again

harassed Plaintiff with respect to her time sheets, including making false accusations about

Plaintiff's whereabouts. Notably, Mr. Forker falsely accused Plaintiff of being away without

leave ("AWOL") and falsely accused her of improperly reporting her whereabouts when she

simply went to Labor Relations to obtain information. (Pl. Stmnt. Point 23).

**H.      Forker's Abuse Of Plaintiff For Interviewing With Another City Agency On June
16, 2004 Is Actionable Retaliation**

Defendant argues that on June 16, 2004, Plaintiff had an interview at a City agency that

ended at 1:30 p.m. and Plaintiff's time sheet stated "offsite lunch @ interview." (Def. Br. 20).

Plaintiff was entitled to take the interview and, in fact, it was "mandatory" for Plaintiff to do so

to remain on the citywide eligibility list. Plaintiff was also entitled to a lunch break. Mr. Forker

sent Plaintiff a buck slip harassing her about her time sheet and falsely accusing her of

improperly reporting her whereabouts, all in an effort to coerce her resignation and/or set her up

for termination. (Pl. Stmnt. Point 23).

**I.      Assignment Of Menial, Degrading Tasks Is Retaliation**

As set forth in the Complaint, Plaintiff alleges, among other items, that Mr. Forker

harassed her with menial, degrading and humiliating tasks. (Pl. Stmnt. Points 14-B, 21-A, 21-B).

Defendant argues that Plaintiff's evidence is nothing more than "a few minor disagreements with

a supervisor over a two year period." (Def. Br. 20). This is baseless. There were numerous

incidents of retaliation from at least late 2002/early 2003 throughout 2004. (See Points 4-B and

5-B above).  It is for a jury to evaluate all of these incidents at trial, within the context of all of

Plaintiff's evidence, in deciding Plaintiff's claims.

**J.    The Numerous Incidents Establish A Hostile Work Environment**

Defendant argues that the incidents do not support a hostile work environment claim and

do not reflect discrimination.  (Def. Br. 20-22).  This is frivolous.  Plaintiff's hostile work

environment claims are established by numerous incidents of discrimination, harassment and

retaliation, detailed above.  (See Points 4-B and 5-B above).

Defendant argues that Plaintiff has no evidence that Mr. Stewart instigated any of

Forker's conduct.  (Def. Br. 21).  This is belied by the record.  Mr. Stewart unlawfully denied

Plaintiff's 1998 request for Lotus software (while granting more expensive unnecessary software

to younger male Richard Burbridge) in 1998, unlawfully denied her a raise in 2002, unlawfully

denied her a raise in August 2003 when the alleged "hiring freeze" expired, unlawfully denied

her internet access in 2003/2004, unlawfully denied her two promotions in 2004, unlawfully

denied her a "promotion in place" raise in 2004, and directed his staff (Messrs. Forker, Tsang and

Pearce) to target Plaintiff.  As detailed in Plaintiff's Statement of Facts, Mr. Stewart was fully

aware of Mr. Forker's unlawful conduct and did not take any adverse action against Mr. Forker,

even when Defendant's Office of Employee Policy Compliance found Mr. Forker guilty of the

charges raised by Plaintiff regarding the June 3, 2004 assault.  Mr. Forker was acting on Mr.

Stewart's behalf, as his agent, to retaliate against Plaintiff for her internal and external

complaints of discrimination and retaliation.   This is a matter for the jury at trial.  Moreover, Mr.

Forker's conduct, as a Director, is imputed to Defendant.  (Pl. Stmnt.).

30

**K.**   **Plaintiff Has Established A Causal Connection Between Her Protected Complaints And Defendant's Retaliatory Acts**

Defendant argues that there is no causal connection between Plaintiff's protected activities and the retaliatory actions. (Def. Br. 21-22). Defendant's argument misses the mark.

**1.**   **Plaintiff Engaged In Protected Activity And Defendant Engaged In Numerous Acts Of Unlawful Retaliation**

Defendant alleges that Plaintiff's protected activities were limited to (1) a November 2002 internal complaint, (2) a February 2004 internal complaint, (3) a June 8, 2004 internal complaint, and (4) a June 10, 2004 internal complaint. (Def. Br. 21). Defendant erroneously omits Plaintiff's March 23, 2004 complaint with the NYSDHR and all of Plaintiff's supplemental submissions to the NYSDHR in 2004 and thereafter. Plaintiff also supplemented her June 10, 2004 complaint with additional incidents of discrimination, harassment and retaliation. This is *per se* a protected activity. (Pl. Stmnt. Points 24). Defendant engaged in adverse action against Plaintiff following her protected activities. This brief sets forth a lengthy list of Defendant's unlawful retaliation. (See Points 4-B and 5-B above).

**2.**   **The Evidence Establishes A Causal Connection**

Contrary to Defendant's arguments, the evidence establishes a causal connection between Plaintiff's protected activities and the retaliation.

For example, after Plaintiff filed her November 2002 complaint of discrimination, Defendant unlawfully denied her computer work and then unlawfully denied her internet access, even though she was a Computer Specialist. The protected activities and retaliation were close in time and Defendant's stated reasons for its conduct are a prextext for unlawful retaliation. (Pl. Stmnt. Points 13, 14, 15).

31

For example, after Plaintiff filed her February 2004 internal complaint of discrimination, Defendant issued a March 2004 letter promoting Mr. Forker to Director Force Accounts and issued an April 2004 letter unlawfully denying Plaintiff's application for promotion to Director Force Accounts.  Again, the protected activities and retaliation are close in time and Defendant's stated reasons for denying Plaintiff promotion to Director Force Accounts and an interview were a pretext for unlawful retaliation.  (Pl. Stmnt. Points 16, 17).

For example, after Plaintiff filed her February 2004 internal complaint and March 23, 2004 NYSDHR complaint, Defendant unlawfully denied Plaintiff an interview for promotion to Director EFR.  On or about March 25, 2004, Plaintiff applied for the position.  Donald Tsang then unlawfully denied Plaintiff an interview for the position and Defendant promoted Joseph DiLorenzo to the position.  Plaintiff's protected activities and Defendant's unlawful retaliation were close in time.  Moreover, Mr. Tsang testified that Plaintiff was unqualified because her resume was three pages, which Mr. Tsang alleged was too long.  However, in 2000, Defendant promoted Mr. Forker, who had a three-page resume, to Director EFR, and Mr. Tsang chaired the hiring panel.  Also, Defendant's business records listed Plaintiff as qualified for the position. Thus, Defendant's stated reason for denying Plaintiff an interview for promotion to Director EFR and denying her a promotion was a pretext for unlawful discrimination and retaliation.  (Pl. Stmnt. Points 17, 19, 20 and ¶ 629).  Similarly, there is a causal connection between Plaintiff's protected activities and the other retaliatory acts set forth in Plaintiff's Statement of Facts.

## POINT SIX

### DEFENDANT CONSTRUCTIVELY DISCHARGED PLAINTIFF

**A.  Standard For Constructive Discharge**

Defendant argues that Plaintiff was not constructively discharged.  (Def. Br. 22-24).

Nothing could be further from the truth.  Plaintiff was constructively discharged by numerous

incidents of discrimination, harassment and retaliation.  (See Points 4-B, 5-B above).  Plaintiff is

entitled to a jury trial on her constructive discharge claim.  (Pl. Stmnt. Point 28).

A constructive discharge claim is established where Plaintiff shows that her working

conditions were deliberately made intolerable so that a reasonable person would be compelled to

resign.  Incidents of discrimination, harassment, retaliation and/or hostile work environment can

establish such a claim.  Petrosino, 385 F.3d 210, 229; Terry, 336 F.3d 128, 152-53; accord Mack

v. Otis Elevator Co., 326 F.3d 116, 128 (2nd Cir. 2003), cert. denied, 540 U.S. 1016 (2003); see

also Pennsylvania State Police v. Suders, 542 U.S. 129, 142 (2004) ("Under the constructive

discharge doctrine, an employee's reasonable decision to resign because of unendurable working

conditions is assimilated to a formal discharge for remedial purposes").  Such is the case here.

At a minimum, this is a question for the jury to decide at trial.

**B.  Plaintiff Has Substantial Evidence Of Constructive Discharge**

Plaintiff was constructively discharged by all of the incidents of discrimination,

harassment, retaliation and hostile work environment, the incidents of which are listed above in

Points 4-B and 5-B.  (See Sections 4-B and 5-B above).  Significantly, because of Defendant's

unlawful conduct, in February 2004, Plaintiff's blood pressure substantially increased and

33

Plaintiff's health was placed at risk, requiring Plaintiff to substantially increase her dosage of blood pressure medication. This is confirmed by her medical records. (Pl. Stmnt. Points 26, 28).

After Mr. Forker's unlawful June 3, 2004 assault and threat of violence against Plaintiff, which endangered her health and safety, she had no choice but to remove herself from the hostile work environment. She took a leave of absence, while her internal complaints and NYSDHR complaint were pending, to give Defendant an opportunity to take remedial action. Defendant failed and refused to do so, even after upholding Plaintiff's June 2004 complaint. (Pl. Stmnt. Points 26, 27). As Plaintiff approached the end of her protected leave of absence, on July 26, 2005, Plaintiff contacted Defendant and sent a letter to Defendant regarding her leave of absence and plans for returning to work. She sought to return to work for Defendant in an appropriate position away from the unlawful discrimination and retaliation, away from Mr. Stewart and Mr. Forker, and with the possibility of career advancement. Plaintiff sent a resume to Defendant and communicated with Defendant. In August 2005, Defendant advised Plaintiff of one entry level, dead-end position, with no possibility of advancement. Defendant knew Plaintiff would not want such a position, since it was not comparable to her prior position at Defendant and precluded advancement. (Pl. Stmnt. Point 28).

On September 15, 2005, Defendant sent a letter to Plaintiff ordering her to return to work on September 26, 2005 and report to work for Mr. Forker and others that had discriminated against her, harassed her and retaliated against her. Defendant did so to unlawfully coerce Plaintiff's resignation and/or to create a phony paper trail to support her unlawful discharge in the event Plaintiff failed to report to work on September 26. Given the unlawful discrimination, harassment and retaliation, Plaintiff could not return to work for Mr. Forker and was

34

constructively discharged. (Pl. Stmnt. Point 28; Compl. ¶¶ 16, 29, 115). Plaintiff's constructive

discharge claim is directly supported by her medical records reflecting dangerously increasing

blood pressure and deteriorating health in 2004, and expert witness Dr. Robert Goldstein, whose

expert report supports the claim. (Pl. Stmnt. Points 26, 28; Compl. ¶¶ 116-117).

Defendant argues that "plaintiff was given a one-year leave of absence in order to try out

a computer career with a New York City agency." Defendant then argues that it offered Plaintiff

a position in 2005 and Plaintiff declined the position, preferring to remain with the other agency.

(Def. Br. 24). This is contradicted by the above facts and is disingenuous.

### POINT SEVEN

### DEFENDANT UNLAWFULLY DENIED PLAINTIFF PROMOTIONS

A.   **The Standard For Denial Of Promotion Claims**

Defendant argues that Plaintiff has not adduced sufficient evidence to proceed to trial on

her claims that she was twice unlawfully denied a promotion in 2004, first to Director, Force

Accounts and then to Director, EFR. Defendant admits that Mr. Stewart approved the promotion

decisions that resulted in denial of promotion to Plaintiff (as well as Dawn Irby and Evelyn Nau).

(Def. Br. 24-26, 31). Defendant's arguments are baseless.

The elements of a claim of denial of promotion are: (1) qualified for and applied for

position; (2) denied position; (3) circumstances raising inference of discrimination. See Everson

v. New York City Transit Authority, Civ. No. 1:02-Cv-1121-ENV-JMA (E.D.N.Y. Feb. 16,

2007). The claim is analyzed under the burden shifting approach enunciated in McDonnell

Douglas Corp. v. Green, 411 U.S. 792 (1973); see Holt v. KMI-Continental, Inc., 95 F.3d 123,

129 (2d Cir. 1996). Statements made by a decision maker can be sufficient evidence to deny

35

summary judgment. Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 468 (2d Cir. 2001)

(quoting Danzer v. Norden Sys., Inc., 151 F.3d 50, 56 (2d Cir. 1998)); see also Zakre v.

Norddeutsche Landesbank Girozentrale, 396 F. Supp. 2d 483, 508 (S.D.N.Y. 2005). Such is the

case here.

**B.     Director Force Accounts**

The evidence demonstrates that Plaintiff was unlawfully denied promotion to Director

Force Accounts. (Pl. Stmnt. Point 15). Nevertheless, Defendant argues that (1) six applicants

were interviewed for Director Force Accounts, (2) Mr. Pearce selected Mr. Forker for the

position and (3) Mr. Stewart approved the decision (Def. Br. 24-25, 31). Defendant also argues

that on January 23, 2004, Ken Pearce (Senior Director) interviewed Plaintiff for the position of

Director Force Accounts and that Plaintiff was "uncooperative" and "unresponsive", which

"insured she would not be selected for the position." (Def. Br. 25). Defendant argues that

Plaintiff "had never held a management title at the Transit Authority" and was always an Analyst,

and Plaintiff demonstrated no management skills at her interview. (Def. Br. 30). Defendant

admits that Mr. Forker had been with Defendant since only 1999,[3] but argues that he had served

as Acting Director Force Accounts (Def. Br. 30). Defendant also argues that Mr. Forker had an

analyst position at the Manhattan Borough President's office. (Def. Br. 30-31).

Defendant's arguments are baseless. The evidence demonstrates that Plaintiff was more

qualified than Mr. Forker for the position of Director Force Accounts and that Defendant was

fully aware of same. This is clear from Plaintiff's background, credentials, experience and

accomplishments at NYCTA. Plaintiff's superior qualifications for Director Force Accounts was

---

[3]Defendant's brief lists the year as "1998", which is apparently a typographical error.

supported by Plaintiff's application materials, Plaintiff's testimony, the testimony of Mr.

Byaruhanga, Dawn Irby, Evelyn Nau, Dorothy Ruiz, and other documentary evidence in the

record. Plaintiff had prior management experience at Defendant as well as prior management

training. Plaintiff's prior management position at Defendant is confirmed by Defendant's own

business records, Plaintiff's resume, and witness testimony. Thus, Defendant's stated reason for

denying Plaintiff a promotion, her alleged lack of managerial experience, was a pretext for

discrimination and retaliation. (Pl. Stmnt. Points 2, 3, 8, 16).

The evidence also demonstrates that Evelyn Nau, another older female employee, was far

more qualified than Mr. Forker for promotion to Director Force Accounts, and yet Defendant

denied Ms. Nau the promotion. This was another act of discrimination by Defendant. Indeed,

Ms. Nau was considered an expert in Force Account estimating. (Pl. Stmnt. Points 5, 8, 16).

Defendant states "Every indication is that plaintiff was a competent analyst." (Def. Br.

30). This is true and, in fact, Plaintiff was a "stellar" employee as confirmed by Mr. Byaruhanga.

(Pl. Stmnt. Points 2, 3). Defendant then attempts to argue that Mr. Forker was somehow more

qualified than Plaintiff and Ms. Nau for the position. (Def. Br. 29-31). To the contrary, Plaintiff

and Ms. Nau were both objectively more qualified than Mr. Forker for promotion to Director

Force Accounts. (Pl. Stmnt. Points 2, 3, 5, 8, 16).[4] Defendant states that Mr. Pearce did not

_____

[4]Defendant states that there is no evidence that Mr. Stewart influenced Mr. Pearce's
decision to hire Mr. Forker for the position. (Def. Br. 31). This is frivolous. Mr. Stewart
appointed Mr. Forker to Acting Director Force Accounts in 2002 to pre-select him for promotion
to Director Force Accounts. (Pl. Stmnt. Point 10). Mr. Pearce reported to Mr. Stewart, served as
his agent, and did Mr. Stewart's bidding in promotions including promoting Mr. Forker to
Director Force Accounts ahead of more qualified older female employees Plaintiff and Ms. Nau.
(Pl. Stmnt Point 16). The argument is also irrelevant because Mr. Stewart, Mr. Forker and Mr.
Pearce all acted on behalf of Defendant and, therefore, their conduct is imputed to Defendant.

37

engage in any conduct during his January 23, 2004 interview with plaintiff that was discriminatory. (Def. Br. 28-29). To the contrary, and as detailed in Plaintiff's notes of her meeting with Mr. Pearce and other documents, he made discriminatory statements to Plaintiff and Ms. Nau at their respective "interviews" for promotion to Director Force Accounts. Those "interviews" were a sham because, among other items, Defendant failed to convene a hiring panel and Mr. Pearce made it clear to both Plaintiff and Ms. Nau that Mr. Forker had been pre-selected for promotion to Director Force Accounts. (Pl. Stmnt. Point 16). Defendant admits that Pearce labeled Plaintiff as "quirky" and Pearce and Stewart said Plaintiff was "not management material." Such statements are defamatory and part of the unlawful conduct. (Def. Br. 26).

## C.   **Director EFR**

The evidence demonstrates that Defendant unlawfully denied Plaintiff promotion to Director EFR and unlawfully denied Plaintiff an interview for that position. (Pl. Stmnt. Point 20). Defendant promoted Joseph DiLorenzo, a younger less qualified male, to the position. Mr. Tsang testified that Plaintiff was denied an interview because her resume was three pages long. Yet Defendant promoted Mr. Forker to Director EFR (in 2000) when his resume was three pages long, and Mr. Tsang chaired the hiring panel. This alone establishes pretext sufficient to mandate a trial. Also, Defendant, denied Plaintiff an interview even though (1) Defendant alleged that all qualified employees in Plaintiff's Unit were interviewed and (2) Defendant generated a report listing Plaintiff as "qualified" for the position. Defendant also unlawfully denied Dawn Irby promotion to Director EFR, as she was another older female far more qualified for the position than Mr. DiLorenzo. (Pl. Stmnt. Points 2, 3, 4, 20). Mr. Tsang reported to Mr.

38

Stewart and did his bidding in connection with promoting Mr. DiLorenzo to Director EFR ahead

of more qualified older female employees Plaintiff and Ms. Irby. (Pl. Stmnt. Point 20).

Defendant argues that Plaintiff was denied an interview for the Director EFR job and that

Donald Tsang selected Joseph DiLorenzo for the position. (Def. Br. 25, 31-32). Defendant

states that Plaintiff is not alleging that she was denied an interview for Director EFR because of

her age and gender. (Def. Br. 31-32). To the contrary, Plaintiff alleges that she was denied an

interview and denied the position because of her age and gender and in retaliation for her prior

complaints. (Pl. Stmnt. Point 20). Plaintiff is entitled to a trial on the claim.

## POINT EIGHT

### DEFENDANT IS SUBJECT TO THE NYCHRL

Defendant argues that it is not subject to the NYCHRL. (Def. Br. 35-36). In fact,

Defendant is covered by the NYCHRL. Bogdan v. New York City Tr. Auth., No. 02-CV-9587,

2005 WL 1161812, at *12 (S.D.N.Y. May 13, 2005)("TA's claim of exemption from the

anti-discrimination provision of the New York City Administrative Code is rejected"); Everson

v. New York City Tr. Auth., 216 F.Supp.2d 71, 81 (E.D.N.Y. 2002)("the Court must deny the

NYCTA's motion to dismiss the claims under New York City's Administrative Code"); Tang v.

New York City Tr. Auth., 55 A.D.3d 720, 867 N.Y.S.2d 453, 2008 NY Slip Op 07903 (App.

Div. 2008)("Compliance with the provisions in the Administrative Code against employment

discrimination would not [*721] interfere with the function and purpose of the Transit

Authority"); see also, e.g., Muhammad v. New York City Tr. Auth., 450 F. Supp.2d 198, 206

(E.D.N.Y. 2006); Stamm v. New York City Transit Authority, No. 04-CV-2164, 2006 WL

1027142, at *16 (E.D.N.Y. 2006); Simmons v. New York City Transit Authority,

(CPS)(RLM)(E.D.N.Y. Jul. 17, 2008) at 5-6 (NYCHRL applies to Transit Authority and the only exemption pertains to local laws that interfere with the accomplishment of the Transit Authority's purpose to provide public transportation). The NYCHRL expressly provides for various damages and relief and Plaintiff seeks same.

### POINT NINE

### THE COURT SHOULD STRIKE DEFENDANT'S ELEVENTH-HOUR AFFIDAVITS

This Court should disregard the eleventh-hour affidavits of Pamela Noonan-Coppola, Patrick Smith, Craig Stewart, Osmond Ken Pearce, Donald Tsang, and Titus Byaruhanga, submitted by Defendant. Defendant apparently wants the Court to ignore the deposition testimony of those witnesses (except Mr. Smith, who was not deposed). A party's affidavit which contradicts his own prior deposition testimony must be disregarded on a motion for summary judgment. Mack v. U.S., 814 F.2d 120, 124 (2d Cir. 1987); Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001); Bickerstaff v. Vassar College, 196 F.3d 435, 455 (2d Cir. 1999) (quoting Hayes v. New York City Dep't of Corrs., 84 F.3d 614, 619 (2d Cir. 1996).

For example, in Ms. Coppola's affidavit, she alleges that any person appointed to a civil service title receives the better of the minimum salary for the position and their current NYCTA salary. (Coppola Aff. ¶ 10). However, Defendant admits that it hired Mr. Forker from outside the NYCTA and paid him above the NYCTA minimum for his position. (Pl. Stmnt. Point 8).

For example, in Mr. Smith's affidavit, he alleges that in 1980, Plaintiff was provisionally appointed ATMA. (Smith Aff. ¶ 9). To the contrary, Plaintiff was hired for the permanent position. (Pl. Stmnt. Points 2, 3).

For example, in Mr. Pearce's affidavit, he alleges that he recommended Mr. Forker for

40

promotion to Director Force Accounts because he performed well as Acting Director.  (Pearce Aff. ¶ 8).  This simply reaffirms that Defendant unlawfully pre-selected Mr. Forker for promotion.  Defendant admits that service as Acting Director was not a prerequisite for promotion and was not supposed to result in preferential treatment.  (Pl. Stmnt. Point 16 and ¶ 600, ¶ 605).

For example, in Mr. Tsang's affidavit, he alleges that he denied Plaintiff an interview for Director EFR because her three-page resume was too long.  (Tsang Aff. ¶ 16).  However, Defendant promoted Mr. Forker to Director EFR with a three-page resume.  This simply reaffirms that Plaintiff was unlawfully denied promotion to Director EFR.  (Pl. Stmnt. Point 20).

## POINT TEN

## CONCLUSION

The Court should deny Defendant's motion for summary judgment in its entirety. Plaintiff requests an award of attorneys' fees and costs incurred in responding to the motion.

Dated: New York, New York
       November 13, 2009

                                      KENNETH A. GOLDBERG

                              By:     _Kenneth A. Goldberg_

                                      Kenneth A. Goldberg (KG 0295)
                                      Attorney for Plaintiff
                                      60 East 42nd Street
                                      New York, New York 10165
                                      (212) 983-1077

41