UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x

LORETTA LOCICERO,

                Plaintiff,        **MEMORANDUM AND ORDER**

  -against-                             Case No. 06-CV-4793 (FB) (JO)

NEW YORK CITY TRANSIT AUTHORITY,

                Defendant.
------------------------------------------------------x

*Appearances:*
*For the Plaintiff:*
KENNETH ANDREW GOLDBERG
Goldberg & Fliegel LLP
60 East 42nd Street
New York, NY 10165

*For the Defendant:*
KRISTEN M. NOLAN
New York City Transit Authority
130 Livingston Street, Room 1213
Brooklyn, NY 11201

**BLOCK, Senior District Judge:**

       Loretta Locicero ("Locicero"), a sixty year-old woman, claims that the New York City Transit Authority ("NYCTA") discriminated against her by "pre-selecting" less qualified, younger male employees for management jobs she applied for, and was then subjected to numerous retaliatory acts for complaining about that and other allegedly discriminatory acts. Moreover, she claims to have suffered a hostile work environment, leading to her constructive discharge from NYCTA, where she had worked since 1976. Locicero brings her claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").

       Pursuant to Federal Rule of Civil Procedure 56, NYCTA moves for summary

judgment on all claims. For the reasons that follow, the Court grants the motion in part and denies it in part.

## SUMMARY JUDGMENT STANDARD

In ruling upon a motion for summary judgment, the Court "must determine (a) whether there is a 'genuine issue as to any material fact,' and (b) whether, in light of the undisputed facts, 'the movant is entitled to judgment as a matter of law.'" *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010) (quoting Fed. R. Civ. P. 56(c)(2)). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010) (internal quotation marks omitted). Further, "facts must be viewed in the light most favorable to the nonmoving party." *Ricci v. DeStefano*, 129 S.Ct. 2658, 2676 (2009).

## DISCRIMINATION

Where there is no direct evidence of discrimination, age and sex discrimination claims are analyzed using the familiar *McDonnell Douglas* burden-shifting framework. *See Leibowitz v. Cornell University*, 584 F.3d 487, 498 (2d Cir. 2009).

To establish a prima facie claim in a failure to hire case, a plaintiff must show that (1) she is a member of a protected class, (2) she was qualified for the job for which she applied, (3) she was denied the job, and (4) the denial occurred under circumstances that give rise to an inference of invidious discrimination. *See Vivenzio*, 611 F.3d at 106.

"Once a plaintiff has established a prima facie case of age or gender discrimination, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason" for the failure to hire. *See Leibowitz*, 584 F.3d at 498–99.

If the defendant articulates such a reason, "the burden shifts back to the plaintiff to demonstrate by competent evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* at 499. "Proof that the defendant's explanation is unworthy of credence is . . . one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000). "Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated," *id.* at 148; on the other hand, "there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Id.* The Second Circuit has held that "the Supreme Court's decision in *Reeves* clearly mandates a case-by-case approach, with a court examining the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'" *Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000) (quoting *Reeves*, 530 U.S. at 143).

Locicero claims that she was the victim of age and sex discrimination twice in 2004: (A) when she was not hired as Director, Force Accounts Management; and (B) when she was not selected to interview for Director, Employee Facility Rehabilitation.[1] At

---

[1] Locicero alleged four other discrete discriminatory acts: (1) the denial of a request for software in 1998; (2) NYCTA's hiring in 2000 of a younger man instead of Locicero's older female coworker for Director, Employee Facility Rehabilitation; (3) NYCTA's failure to appoint Locicero an acting Director of Force Accounts Management

oral argument on November 30, 2010, NYCTA's attorney conceded that Locicero had made out both prima facie cases, because, as a woman over forty years-old, she was a member of both protected classes, and in each case was qualified for and denied the position, which was ultimately offered to a male applicant who was twelve years younger. *See D'Cunha v. Genovese/Eckerd Corp.*, 479 F.3d 193, 195 (2d Cir. 2007) (holding that an eight year age difference is "significant enough to support an inference" of discrimination in age discrimination cases); *Byrnie v. Town of Cromwell*, 243 F.3d 93, 102 (2d Cir. 2001) (holding that older male plaintiff "easily made out a prima facie" age and sex discrimination case where job was given to a younger female applicant). Defendant contends, however, that it is entitled to summary judgment because it had non-pretextual reasons not to hire her for each position.

## A. Director, Force Accounts Management

In March 2004, NYCTA denied Locicero a promotion to Director, Force Accounts Management. The job was ultimately offered to Tim Forker ("Forker"), who had occupied the job in an acting capacity since 2002.

NYCTA's non-discriminatory reason for its decision not to give Locicero the job was that she was uncooperative during her interview; Locicero's own notes about her

---

in 2002; and (4) the denial of a raise in 2002, when Locicero's title was changed. At oral argument, Locicero's attorney conceded that these four allegedly discriminatory acts occurred outside the 300-day limitations period for Title VII and ADEA claims. *See* 42 U.S.C. § 12117(a); 29 U.S.C. § 626(d)(1).

4

interview tend to support NYCTA's claim.[2] Moreover, Locicero testified at her deposition that she never heard directly or indirectly that any of her supervisors, or any other manager, made statements reflecting a negative attitude about women or older people.

To show that NYCTA's non-discriminatory reason was a pretext for discrimination, Locicero avers that her interviewer, Ken Pearce ("Pearce") — the Senior Director of Force Accounts Management — told her during her interview that "he would not change his appointment of Mr. Forker, even if he had another candidate sitting in front of him with better skills and qualifications." Def.'s Ex. DD, Locicero Mar. 6, 2008 Dep. 165:13-16. A reasonable juror could infer from this statement that NYCTA's purported reason for not offering Locicero the job was "unworthy of credence." *See Reeves*, 530 U.S. at 143. Such a showing of falsity, combined with Locicero's prima facie case, and that the job was ultimately offered to Forker, is a sufficient showing to defeat summary judgment. *See id.* at 148.

**B. Director, Employee Facility Rehabilitation**

In April 2004, Locicero was denied an interview for the position of Director, Employee Facility Rehabilitation. The job was ultimately offered to Joseph DiLorenzo ("DiLorenzo"), who had occupied the position as a co-acting director since 2002. NYCTA's

---

[2]For example, when Pearce asked her during her interview why she was qualified for the job, she responded by "refer[ing] [him] to my cover letter summary that enumerated my qualifications," Def.'s Ex. U, and during her deposition she said her response to the same question was "Have you read my resume and cover letter?" Def.'s Ex. DD, Locicero Mar. 6, 2008 Dep. 142:3-4; moreover, she wrote in her notes that when Pearce asked her if she had any proposals for improving operations, she "presented a few proposals," but she "[r]efused to give too much detail (fear of 'brain drain')." *See* Def.'s Ex. U.

5

non-discriminatory reason for its decision not to offer Locicero an interview was that her resume was too long. Donald Tsang ("Tsang") was in charge of selecting applicants for interviews. In his deposition, he testified that his reason for not interviewing Locicero was that her resume was more than two pages; he thought that "very little preparation process [] went into this resume and that usually, to me, it's not a good sign." Pl.'s Ex. M, Tsang Dep. 71:18-21. Of the fifty-nine applicants who submitted resumes for this position, none of the eleven applicants who submitted a resume longer than three pages was given an interview. Tsang selected eight applicants to interview, all had submitted resumes two pages or shorter.

To show that NYCTA's non-discriminatory reason was a pretext for discrimination, Locicero alleges that in 2000—prior to being appointed acting Director, Force Accounts Management in 2002—Forker had been selected by Tsang for the same job Locicero applied for in 2004. When Forker applied for the job, his resume was three pages long. A reasonable juror could infer from this fact that Tsang's reason is "unworthy of credence." *See Reeves*, 530 U.S. at 143. Such a showing of falsity, in combination with Locicero's prima facie case, and that the job ultimately went to DiLorenzo, is sufficient to defeat summary judgment. *See id.* at 148.

## RETALIATION

Retaliation claims under Title VII and the ADEA are subject to the same *McDonnell Douglas* burden-shifting framework applicable to discrimination claims. *See Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006). To establish a prima facie case of retaliation, a plaintiff must demonstrate: (1) that she engaged

in a statutorily protected activity; (2) that her employer was aware of this activity; (3) that she suffered an adverse employment action; and (4) a "causal connection" between the protected activity and the adverse employment action. *See id.*

To qualify as a "protected activity," a plaintiff alleging retaliation must show that complaints filed against the employer were made in good faith. *See Kessler*, 461 F.3d at 210 ("[T]he plaintiff need only have had a good faith, reasonable belief that he was opposing an employment practice made unlawful by Title VII [or the ADEA].") (alteration in original) (internal quotation omitted). NYCTA's attorney conceded at oral argument that Locicero had, in good faith, engaged in four protected activities of which it was aware:

- On February 18, 2004, Locicero filed a complaint with the Metropolitan Transportation Authority, Office of Civil Rights, Division of Equal Employment Opportunity ("EEO") against Stewart, alleging that he had denied her a promotion to Director, Force Account Management, because of her gender and age;

- On March 23, 2004, Locicero filed a charge with the New York Department of Human Rights, alleging discrimination and retaliation against NYCTA for denying her a promotion to Director, Force Accounts Management;

- On June 8, 2004, Locicero filed an internal complaint against Forker with the Office of Compliance, alleging that he banged his fist on his desk and threatened her by saying "Do you want to start something?";

- On June 10, 2004, Locicero filed a complaint with the EEO, alleging that she had been denied an interview for Director, Employee Facility Rehabilitation, in retaliation for filing a complaint on February 18, 2004 against Stewart.

- Locicero's attorney conceded at oral argument that a

7

fifth protected act—Locicero's November 7, 2002 complaint to the EEO against Pamela Noonan-Coppola ("Noonan-Coppola"), Senior Director for Subways Support, alleging that Locicero was denied a raise when her title was changed to "Computer Specialist" because of her sex—occurred too far in the past for a reasonable jury to infer causation.

NYCTA's attorney also correctly conceded at oral argument that if the acts Locicero claimed she suffered after her February 18, 2004 complaint constituted adverse employment actions, causation could be inferred because of their temporal proximity to her four protected activities. *See Quinn v. Green Tree Credit, Corp.*, 159 F.3d 759, 769 (2d Cir. 1998) (affirming district court's finding of causal connection because the alleged retaliatory act occurred "less than two months after [plaintiff] filed a complaint").

Locicero alleges four adverse employment actions which occurred after she filed her February 18, 2004 complaint:

- Changes in the nature of Locicero's work, post-February 18, 2004;

- Denying Locicero a raise in April 2004;

- Forker's "harassment" and "assault" of Locicero for failing to properly record her time, and for taking too long to complete assignments post-February 18, 2004;

- Tsang's not offering Locicero an interview for Director, Employee Facility Rehabilitation in April 2004.

NYCTA maintains that Locicero has not made out a prima facie case because none of those allegedly retaliatory acts constituted "adverse employment actions." To qualify as an "adverse employment action," the action must be "materially adverse to a reasonable employee or job applicant." *Burlington Northern & Santa Fe Ry., Co. v. White*, 548

U.S. 53, 57 (2006). "Actions are materially adverse if they are harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (internal quotations omitted). "In determining whether conduct amounts to an adverse employment action, the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently substantial in gross as to be actionable." *Id.* (internal quotations omitted).

Under *Burlington Northern*'s standard, Tsang's failure to offer Locicero an interview for Director, Employee Facility Rehabilitation, constituted an adverse employment action. *See Gonzalez v. New York City Transit Auth.*, No. 06-CV-761, 2008 WL 924934, at *12 (E.D.N.Y. Mar. 31, 2008) (so holding). Therefore, it is unnecessary to now determine whether the three other allegedly adverse acts also support a retaliation claim.

Thus, Locicero has satisfied her prima facie burden. As noted above, there is an issue of fact about whether Tsang's reason for not offering Locicero an interview — her three page resume — was pretextual; the same issue of pretext precludes summary judgment here.

## HOSTILE WORK ENVIRONMENT/CONSTRUCTIVE DISCHARGE

### A. Hostile Work Environment

Title VII and the ADEA are violated "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (Title VII) (internal citations

9

and quotations omitted); *see also Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 240-41 (2d Cir. 2007) (ADEA). For a single act to reach this threshold it must be "extraordinarily severe." *Mormol v. Costco*, 364 F.3d 54, 59 (2d Cir. 2004). "A plaintiff must also demonstrate that she was subjected to the hostility because of her membership in a protected class." *Kassner*, 496 F.3d at 241.

Locicero bases her hostile work environment claim on "repeated incidents of discrimination, harassment and retaliation" which are set forth in a nineteen point list in her memorandum of law. *See* Pl.'s Mem. of Law at 17-19. These incidents almost entirely involve statements or actions by Forker; because there is not any evidence—direct or indirect—that Forker was motivated by discrimination, his statements and actions cannot support a hostile work environment claim.

For only two of the incidents alleged by Locicero as contributing to her hostile work environment is there any evidence of discriminatory intent, and those are Locicero's two stand-alone claims of discrimination: the failure to hire her for Director, Force Accounts Management, and the failure to interview her for Director, Employee Facility Rehabilitation. While, as explained above, a reasonable jury could find that these acts constituted discrete instances of unlawful discrimination, such discrimination is different in kind from the repeated, harassing acts which are contemplated by the hostile work environment theory. *Cf. Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 114, 116 (2002) ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify[, and e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a *separate* actionable 'unlawful employment

practice.' . . . Hostile environment claims are different in kind from discrete acts.") (emphasis added). Thus, NYCTA's motion is granted as to Locicero's hostile work environment claim.

## B. Constructive Discharge

Locicero asserts a stand-alone "constructive discharge" claim based on the same alleged acts which she argued gave rise to her hostile work environment claim. She presumably does so to recover lost wages as damages; three courts of appeal have concluded that lost wages are not available "as damages in the context of a meritorious hostile-work-environment claim without a finding of wrongful termination." *Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 475 (6th Cir. 2009); *see also Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 317 (3d Cir. 2006) (holding that a hostile work environment claim alone in the absence of a successful constructive discharge claim is insufficient to support an award for lost wages); *Mallinson-Montague v. Pocrnick*, 224 F.3d 1224, 1236–37 (10th Cir. 2000) (same).

"Where an alleged constructive discharge stems from an alleged hostile work environment, a plaintiff 'must show working conditions so intolerable that a reasonable person would have felt compelled to resign.'" *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 725 (2d Cir. 2010) (quoting *Pennsylvania State Police v. Suders*, 542 U.S. 129, 147 (2004)). "This standard is higher than the standard for establishing a hostile work environment." *Suders*, 542 U.S. at 147. Thus, because Locicero has failed to establish a hostile work environment, she cannot make out a constructive discharge claim, either.

## STATE-LAW CLAIMS

"In deciding whether to exercise jurisdiction over supplemental state-law

claims, district courts should balance the values of judicial economy, convenience, fairness, and comity[.]" *Klein & Co. Futures, Inc. v. Board of Trade*, 464 F.3d 255, 262 (2d Cir. 2006). Locicero's claims brought under the NYSHRL and the NYCHRL are analyzed under the same standards as claims brought under Title VII and the ADEA. *See Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010) (discrimination); *Kassner*, 496 F.3d at 237–38 (retaliation); *Brennan v. Metropolitan Opera Ass'n, Inc.*, 192 F.3d 310, 316-17, 317 n.2 (2d Cir. 1999) (hostile work environment). Where, as here, state and federal law claims are governed by the same standards, judicial economy is best served by exercising supplemental jurisdiction. *See Chambers v. Capital Cities/ABC*, 851 F. Supp. 543, 545 (S.D.N.Y. 1994) ("Duplicative litigation at multiple levels of government involving the same facts [is] contrary to the objectives of the Supplemental Jurisdiction Act and the public interest."). Accordingly, the Court exercises supplemental jurisdiction over Locicero's state and city law claims, and grants summary judgment on her state and city hostile work environment claims for the same reasons set forth above.

## CONCLUSION

The Court denies NYCTA's motion as to Locicero's discrimination and retaliation claims, and grants the motion as to her hostile work environment and constructive discharge claims.

**SO ORDERED.**

s/ Judge Frederic Block

FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
December 9, 2010